MaNly, J.
 

 The bill is filed to call in and cancel, or declare null a bill of sale, made by Sarah Oldham to her son, Young Oldham, for a slave, named Brooksi The equity of the bill is placed on several grounds, viz., fiduciary relations between the parties — a want of consideration — imbecility of mind in the bargainor and imposition. Whatever may be thought of these separately, it must.be conceded, they, altogether, make a clear case, if established, for the interference of the Court. The testimony was considered during the argument, and has since been re-examined, and we find the material facts to be: That, after the death of her husband in 1843, the complainant, then near 10 years of age, and very feeble in body and mind, continued to live iu the family residence with her youngest son, the defendant, as manager. On the 20th of September. 1843, the mother executed a bond to the son for $275, which he alleges was a debt due him from the deceased. On the 12th of April, 1848, she executed the bill of sale in question. The consideration, inserted, is $300, and the amount is credited on the bond. It also appears that a claim, due defendant from the deceased, was brought against the heirs-at-law and settled by a release, to him, of their undi-ded interest in the land where he was living. This deed of .release was executed in 1844.
 

 Without resorting to any questionable evidence, there is abundant proof, that immediately before the death of her husband, she underwent a marked change in body and mind, and
 
 *91
 
 from that time continued in a state of mental and physical decrepitude, until finally, in 1857, she was declared
 
 non compos mentis
 
 by an inquisition of lunacy.
 

 During this entire period, the defendant exercised control over her jrersonal habits and exclusive dominion in the management of their joint affairs, which shows that her will had become entirely subservient to 1ns. If not actually incompetent, at the execution of the bill of sale, she was certainly in a condition of mind easy to be imposed upon. The relations between them (of control on the one hand, and absolute dependance on the other) were such as to make the task an easy one. Accordingly, we find that he uses a bond, which had been procured from his mother immediately after the death of the father' — a bond which had no consideration lo support it — and uses it after its pretended consideration had been once paid, and makes it the basis of the conveyance to him, of the negro boy. It stands in a worse condition than a voluntary conveyance, which, under the circumstances, could not have been upheld, it is a conveyance procured by means of a fra u d ulen t con si d eration.
 

 It is worthy of remark, in this connection, that the account which the subscribing witness gives of the execution of the paper, and ceremony of conveyance, convinces us that it was not only an act of extreme imbecility, but also, of extreme reluctance.
 

 We have not thought proper to notice questions of evidence brought before us, by way of appeal, from the commissioner, as the view we here take is irrespective of testimony excepted to.
 

 Our conclusion then, is, that the bill of sale of
 
 the
 
 12th of April, 1848, was procured by means of a false and fraudulent consideration — by a son, who stood in a position of trust and confidence, and who possessed and exercised remarkable powers of control over a weak and feeble mother ; and that this fraud and influence induced a
 
 reluctant
 
 consent to the forms of a eonvejmnce, which cannot be upheld in a court of Equity. Authority for this conclusion, upon the facts, will
 
 *92
 
 be found in a number of recent cases id our own reports, and in tike cases there cited;
 
 Michael
 
 v. Michael, 4 Ire. Eq. 367;
 
 Ames
 
 v. Satterfield, 5 Ire. Eq. 173;
 
 Deaton
 
 v. Monroe, 4 Jones’ Eq. 39.
 

 It will follow, as a clear legal deduction from the foregoing-facts and 'conclusions, that the statute of limitations, (Rev. Code, chap. 65, sec. 20) which the defendant sets up, cannot ■avail him. If the bill of sale be null for imbecility, influence and fraud, it follows, as long as the influences and conditions subsist, the statute will not help the title. It has already been stated that the influences, under -which complainant was induced to execute the bill of sale, continued until the unfortunate woman became entirely insane. There has been no period, therefore, subsequent to its date, when its redelivery, by the makei-j would have given it validity, and, therefore, “
 
 a
 
 fortiori, mere inaction., could not have that effect.
 

 Pee CuRiAM, Let .a decree be drawn, directing the bill ©f sale to be delivered up to be cancel-led, and costs to be taxed against the defendant.