[Civ. No. 5990. Fourth Dist. Apr. 9, 1959.]

CHARLES J. GOTTESMAN et al., Appellants, v.
HARRY E. SIMON, Respondent.

Tony Geram for Appellants.

Fullerton & Morris for Respondent.

GRIFFIN, P. J.—Plaintiffs and appellants, husband and wife, brought this action against defendant and respondent for personal injuries claimed to have resulted from an automobile accident. The complaint was filed on April 9, 1956, alleging the accident and injuries occurred on September 4, 1954, one year, seven months and five days after the alleged accident. It also alleged that the excusable delay in filing the action was due to the disability of the husband by reason of mental incapacity, incompetency and insanity from the time of the accident to October 1st, 1955, as permitted under section 352, subdivision 2, of the Code of Civil Procedure.

The wife's claim for separate damages for $25,000 was predicated upon loss of companionship, consortium, and mental and physical suffering. No mention was made in the complaint as to the existence of any guardianship proceedings pending during that period. An answer thereto was filed October 4, 1956, denying negligence and wilful misconduct of defendant and alleging contributory negligence of plaintiff husband. Defendant also raised the defense of the statute of limitations in that the action, as pleaded by both plaintiffs, was barred by section 340, subdivision 3, of the Code of Civil Procedure.

The court, on November 8, 1957, ordered a separate trial of this latter defense before the trial of the other issues. After hearing evidence on the subject of plaintiff's claimed insanity and its duration, sitting without a jury, the court made its finding that plaintiff husband had regained his sanity prior to April 8, 1955, and was sane on and after that date, and held that plaintiffs' action was not commenced within the statutory limitation. Judgment was against plaintiffs and for defendant. A motion for new trial was denied.

It is plaintiffs' main contention on appeal that the undisputed evidence submitted shows plaintiff husband to have been insane within the meaning of that term as set forth in said section 352, subdivision 2, Code of Civil Procedure; that his insanity continued well past the period described, and therefore the statute of limitations was tolled during that time and the action was not barred when filed on April 9, 1956. It is further argued that the court erred in finding that before, on and after April 8, 1955, plaintiff husband had regained his sanity.

Plaintiff husband and defendant's wife were injured while he was driving a car owned by defendant husband. Defendant followed them in his other car and Gottesman, in an endeavor to get away from him, lost control of the car he was driving, sideswiped a telephone pole, and caused the car to go into a spin. Defendant Simon, in pursuit, applied his brakes, speeded through the intersection, and smashed into the car driven by plaintiff husband, or at least both machines collided with the same telephone pole. As a result, plaintiff husband was thrown out of the car and suffered injuries which have probably crippled him for life. He was unconscious for a number of weeks, coma set in and he suffered some loss of memory for a considerable period of time. He was confined in the Riverside hospital with severe fractures and a brain concussion for several weeks and was, on September 21, 1954, transferred to the Veterans' Hospital in Long Beach. Plaintiff wife was appointed guardian of the person and estate of her husband on October 8, 1954, on the alleged ground that he was and has been unconscious ever since September 4, 1954, due to brain and physical injuries and incompetent to properly manage and take care of himself or his property. An order for restoration was not obtained until October, 1955.

Plaintiff, in support of the issue of insanity, called as his witness a doctor who testified of his experience in neurology and neuropsychiatric work; that he had known plaintiff hus-

band since September, 1940, gave him a physical examination for a pilot's license about 1953, and said he was then in excellent condition; that he learned about the accident after September 4, 1954, visited him at the Riverside Hospital on several occasions, and that in his opinion, when he first saw Gottesman there he was unconscious and that he remained unconscious until he was transferred to the Veterans' Hospital. Records of the hospital were read in evidence. Gottesman was discharged from the Veterans' Hospital on June 24, 1955. During the time he was there, on at least two occasions, he returned to his home on week-end passes. The doctor testified that he then saw him socially on these occasions; that subsequently he saw him professionally; that during all these occasions, from a medical point of view, his memory was poor, his speech was garbled, and to a certain extent he was probably partially rational; that he did think his actions were such as to call him responsible, but he did not appear to have any memory of the accident and its details until two or three months thereafter; that in his opinion he was not physically or mentally competent to see danger, to observe it or know his condition; that there was evidence of permanent brain damage, such as a condition existing in some ex-boxers who are called "slap happy," or emotionally unstable; that the term "Euphoric," used on the patient's chart, indicates "one step above a person being happy and probably one step below being maniac," i.e., "he is walking on a cloud." The witness was then confronted with a certificate, dated September 22, 1955, which he had filed in the guardianship proceedings on the petition for restoration, stating that Gottesman "is mentally competent as of August 1, 1955."

Gottesman's wife testified she visited her husband in the Riverside hospital and he was then unconscious; that he was unconscious at the time of his removal to the Veterans' Hospital; that about November, 1954, he was conscious enough to speak a word or two to her; that sometime after he regained consciousness, he seemed to understand and then a few minutes later he would forget what she said; that this condition existed from January, 1955, through June, 1955, and even to the present date.

It does appear that she had him sign a deed to some real property dated January 25, 1955, during the period the guardianship existed. He marked an "X" on it and it recited that at his request it was witnessed by two other witnesses. The notary's certificate recites that on February 16, 1955, Gottes-

man acknowledged he executed and delivered the same and that the witnesses subscribed their names thereto. (The question of the validity of this deed is not here involved.)

A physical therapist at the Veterans' Hospital testified he first treated Gottesman about February, 1955, and he was then bedfast; that the patient was cooperative; that he did not believe he was ever "irrational," but he was unstable; that at the time he obtained his first pass he would not say he was insane but he did not believe he was capable of taking care of himself, and that he was gradually growing better in every way.

Defendant produced the notaries public who acknowledged the grant deed executed by the patient, and after testifying as to the practice, over a period of years, of notaries and acknowledging instruments executed by patients in the Veterans' Hospital, they first consulted the doctor and also propounded certain questions themselves in determining whether the patient understood the nature of his act, that this was the practice followed in the instant case at the time the deed was executed.

A duly qualified psychiatrist from Patton State Hospital testified, in response to a hypothetical question propounded to him by counsel for defendant, regarding the material facts in reference to the accident, treatment received by the patient, testimony of other witnesses, and the nature of the injuries produced from the progress notes of the patient's charts, were considered by him. In response to the general question the doctor said he was of the opinion that, from the latter part of February and no later than the early part of March, and certainly on April 8, 1955, the patient was sane, had a full mental capacity, and was not, in a legal sense, insane.

In *Pearl* v. *Pearl*, 177 Cal. 303 [177 P. 845], in dealing with the defense of insanity, as used in section 352, *supra*, the trial court found that decedent was "incapable of caring for his property, or transacting business, or understanding the nature or effects of his acts." The Supreme Court said this "was equivalent to a finding in the express terms that the deceased was insane" under this section. (See also *In re Zanetti*, 34 Cal.2d 136 [208 P.2d 657].) In 54 Corpus Juris Secundum page 269, section 242, it is stated:

"The party who invokes the protection of such saving clause, or those claiming under him, must show the condition of mind contemplated by the statute, which will not be extended to embrace other conditions. The term 'insane,' as

used in this connection, has been given a generic, rather than a technical, meaning, and has been held to mean such a condition of mental derangement as actually to bar the sufferer from comprehending rights which he is otherwise bound to know, and the exception has been held to embrace temporary unsoundness of mind as well as chronic or fixed insanity.''

The term ''insane'' is the equivalent of ''non compos mentis,'' both meaning ''not sane'' or ''of unsound mind.'' (*Jacks* v. *Estee,* 139 Cal. 507 [73 P. 247]; Wood on Limitations, 4th ed., vol. II, p. 1070.)

Defendant fully agrees with plaintiffs that the applicable definitions of insanity are set forth in the excerpts from *Pearl* v. *Pearl, supra,* and *Wade* v. *Busby,* 66 Cal.App.2d 700 [152 P.2d 754], where it is held that the words ''insane'' and ''incompetent'' are not necessarily convertible terms, as a person may be incompetent by reason of insanity or from some other cause. Defendant concedes in his brief that a person lacking in mental capacity to understand the nature or effect of his act is insane.

A narrative summary of the chart made by the attending physician at the Veterans' Hospital showed that on entrance there the patient was in a stuporous condition and unconscious; that by April, 1955, he had improved in his balance and was able to walk short distances using his wheel chair, and that as of June 1, 1955, he was oriented and rational and his speech was understandable. In the absence of the question of the legal effect of the guardianship proceedings it is clear that there was a conflict in the evidence as to the patient's sanity on the date found, which would be sufficient to support the finding of the trial court. It should be here noted that a guardian was appointed under the representations in the petition, as above indicated. The next question is the effect of the guardianship proceedings. It is plaintiffs' claim that proof of adjudication of incompetency presupposes lack of mental capacity to understand the nature and effect of the ward's acts, is conclusive as a matter of law, not subject to an indirect attack, and until a legal decree is obtained restoring him to legal competency such condition is conclusively presumed to exist, citing such authority as *Hellman Commercial T. & S. Bank* v. *Alden,* 206 Cal. 592 [275 P. 794]; *Carroll* v. *Carroll,* 16 Cal.2d 761, 767 [108 P.2d 420]; *Gibson* v. *Westoby,* 115 Cal.App.2d 273 [251 P.2d 1003]. See also 27 California Jurisprudence 2d page 359, section 35, where it is said:

''A person of unsound mind whose incapacity has been

judicially determined cannot make a contract or delegate any power until his restoration to capacity. Such an adjudication constitutes notice 'to all the world' of the incapacity. It amounts to an adjudication in rem, conclusive as such. Whenever it is binding on any person, it is equally binding on all persons, though they have constructive notice only. Hence, where mental incapacity has been adjudged, no further evidence of mental incapacity is required while the decree remains in full force and effect; proof of the adjudication of incompetency amounts to proof of lack of mental capacity to understand the nature and effect of the transaction involved. This is true regardless of whether the person involved was adjudicated insane or incompetent, and regardless of the character or degree of mental derangement involved.'' (See also Condee, California Probate Court Practice, vol. II, p. 219.)

It is then argued that the reception of other evidence on the subject by the trial court, over objections, after the admission of such guardianship proceedings in evidence, was prejudicial error, and that such a cause of action remains in the person under such legal disability and does not shift to the person of the guardian, and the right of action is not affected by the failure of the guardian to sue within the prescribed time, citing *Dixon* v. *Cardozo,* 106 Cal. 506 [39 P. 857]; *O'Shea* v. *Wilkinson,* 95 Cal. 454 [30 P. 588]; and *O'Brien* v. *United Bank & Trust Co.,* 100 Cal.App. 325 [279 P. 1048].

Most authorities relied upon by plaintiff involved the application of sections 38, 39 and 40 of the Civil Code. In *Estate of Powers,* 81 Cal.App.2d 480 [184 P.2d 319] [hearing denied in Supreme Court] involving *testamentary capacity,* it was held that an adjudication of incompetency following testatrix's admission to a hospital prior to the date of execution of the will, is not prima facie evidence of her subsequent incompetency to make a will. There, certain language used in the *Hellman case, supra,* was said to be dictum and opposed the court's holding in *Estate of Johnson,* 200 Cal. 299 [252 P. 1049], where it was held in a will contest, that an adjudication of insanity *raised a presumption* of lack of testamentary capacity on that date but a judgment in the incompetency proceeding was only evidence of mental condition on the day of the adjudication.

Although there is contrary authority from other jurisdictions it appears that the authorities of this state, as they pertain to section 38 (person entirely without understanding in making contracts), section 39 (conveyance or contract of a

person of unsound mind but not entirely without understanding), and section 40 (after incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract until restored to capacity), hold that a judicial determination fixing the status of incompetency prevails until such time as the incompetent is restored to capacity or the guardianship has been substantially abandoned. (28 Am.Jur. 696, § 57; *Gibson* v. *Westoby*, 115 Cal.App.2d 273 [251 P.2d 1003].) In *O'Brien* v. *United Bank & Trust Co.*, *supra*, a different rule appears to apply in reference to mental capacity of a person to execute a will. The critical inquiry in such a case is to determine such capacity at the time of the execution of the will. If this rule can be held to apply to the statute of limitations under section 352, subdivision 2 of the Code of Civil Procedure (insanity) then the guardianship proceeding would not be conclusive of incompetency of Mr. Gottesman on the date found, and other evidence on the subject of restoration to capacity would be admissible. In analyzing this question we are immediately confronted with the opposite rule above cited in respect to sections 38, 39, and 40, *supra*, as well as *Vigne* v. *Superior Court*, 37 Cal.App.2d 346 [99 P.2d 589], where it is held that when it has been judicially determined in a proceeding for the appointment of a guardian, that a person is incompetent to handle his person and property, the effect thereof is to fix the status of incompetency until such time as the incompetent is again restored to capacity; and when a guardian has been appointed, there is no method of restoration to capacity except that provided by section 1470 of the Probate Code, and the probate court is without jurisdiction to pass upon the question of the ward's sanity in a proceeding under sections 613, 614, and 1552 of said code to require the custodian of the ward's will to deliver it to the ward's attorney. To the same effect is *Gibson* v. *Westoby, supra*; *O'Brien* v. *United Bank & Trust Co., supra*; and *Carroll* v. *Carroll, supra*.

 Neither our research nor the briefs of counsel have brought to our attention any case in this state involving the tolling of the statute by reason of insanity, which directly determines the conclusive effect of an order appointing a guardian for an incompetent, insofar as it pertains to the admissibility of the evidence contrary to the finding of the court in the guardianship proceeding.

Defendant argues with some convincing merit that if the doctrine of res judicata should be applied in such cases, an

injured party could well take advantage of the situation and refuse or fail to secure an order of restoration to capacity in the guardianship proceeding and thus continue to take advantage of the limitations statute forever, and defendant would be powerless to object or to compel action by the ward to have restoration to capacity otherwise legally determined; that a holding in this case that the commencement of the running of the statute of limitations would be dependent upon timeliness of termination of guardianship proceedings and not upon any actual incapacity of the plaintiff would result in great mischief and would permit the plaintiffs in this case, and also plaintiffs in the future, to make an affirmative, intended or unintended and abusive use of the guardianship proceedings.

Under sections 38, 39, and 40 of the Civil Code the incapacity arises as a matter of law, unless the guardianship has been terminated by an order of the court or has been substantially abandoned (28 Am.Jur. p. 696, § 57.) This might indicate there may be other circumstances where the harsher rule would not apply. (54 C.J.S. p. 269, § 242.) The evidence in the instant case does not affirmatively show that plaintiff husband did make an affirmative, intentional or unintentional or abusive use of the guardianship proceeding, and there is no finding to this effect. Accordingly, we are not confronted with the question as to what an adequate remedy would be for such claimed abuse. In fact, attending physicians were of the opinion the patient was mentally incapacitated and incompetent to transact any business until June, 1955, or later. (Contracting with an attorney and filing an action may be considered business.)

Opposed to that is the opinion of an expert based mainly on charts kept in the hospital and other evidence produced, without actual knowledge of the patient's mental condition. (See *Estate of Powers, supra,* p. 485.) Neither the Legislature nor the courts have seen fit to relax the rule as applied under sections 38, 39, and 40 of the Civil Code, to conform to the rule applied in the making of testamentary disposition of property. We conclude from the decisions that it was the intent to equally apply them to section 352, subdivision 2 of the Code of Civil Procedure. Accordingly, any evidence as to the sanity of plaintiff husband, admitted over objections after the reception in evidence of the guardianship adjudication, was erroneously received. (*O'Brien* v. *United Bank & Trust Co., supra,* p. 329.)

Since the right of action vests in the ward, it is not affected by the failure of the guardian to sue within the prescribed

time. (*O'Shea* v. *Wilkinson*, 95 Cal. 454 [30 P. 588] ; *Dixon* v. *Cardozo*, 106 Cal. 506 [39 P. 857].)

As to plaintiff wife, Ruth Gottesman, her claimed cause of action was referred to by appellants' counsel in his brief as being for loss of "consortium." If so, such action for loss of "consortium" is not actionable. (*Deshotel* v. *Atchison, T. & S. F. Ry. Co.*, 50 Cal.2d 664 [328 P.2d 449].) Regardless of this, the statute of limitations, as to her, was not tolled under any theory. Under section 370 of the Code of Civil Procedure, she was entitled to sue alone for any claimed damage to her, and such an action was barred by section 340, subdivision 3 of the Code of Civil Procedure. (*Moody* v. *Southern Pac. Co.*, 167 Cal. 786 [141 P. 388] ; *Basler* v. *Sacramento etc. Gas. Co.*, 166 Cal. 33 [134 P. 933].) The judgment as to her should be affirmed. A new trial should have been granted to plaintiff husband.

Judgment against plaintiff Ruth Gottesman affirmed. Judgment against plaintiff Charles J. Gottesman reversed.

Mussell, J., and Shepard, J., concurred.