RONALD E. CHAFFIN *v.* JOHN B. NICOSIA.

[No. 574S95. Filed May 14, 1974.]

*Petition to transfer granted; cause reversed and remanded.*

Martin H. Kinney, Nick Katich, Addison, Stiles, Greenwald and Kinney, of Gary, for appellant. David F. McNamar, Steers, Klee, Sullivan & Lemay, attorney amicus curiae for appellant.

Richard J. Lesniak, Given, Dawson & Cappas, of East Chicago, for appellee. Richard L. Fairchild, Stewart, Irwin, Gilliom, Fuller & Meyer, attorney amicus curiae for appellee.

HUNTER, J.—This cause arises upon petition to transfer and presents two issues for our determination:

(1) Whether a statute allowing medical practitioners the special privilege of a two-year time period within which they may be sued is violative of Article 1, § 23 of the Constitution of Indiana;

(2) Whether the two-year statute of limitations for medical malpractice is an exception to, or in irreconcilable conflict with, a statute allowing minors to sue within two years after reaching majority.

Appellant's complaint alleged medical malpractice on the part of appellee arising from appellee's treatment of appellant's mother during her pregnancy and during appellant's birth. More specifically, the complaint alleged the following:

"During 1941, Marjory Chaffin became pregnant and employed Nicosia to care for her through the pregnancy and the birth of her child. She had suffered a prior miscarriage of which Nicosia was aware. He advised her that she would also have trouble carrying this child.

"Approximately four days prior to August 28, 1942, Marjory Chaffin began to have labor pains. Nicosia advised her that he would not do anything until he took x-rays to determine Ronald's position in the womb. Nicosia, however, failed to take the x-rays, failed to prescribe medication, and failed to take any other positive action.

"Marjory Chaffin remained in labor for approximately seventy-two hours, and Ronald was finally born on August 28, 1942. During the delivery process, Nicosia used forceps on both sides of Ronald's head, near his eyes. There were large areas of discoloration on both sides of Ronald's head for several days after birth. For more than one year, he also had dents on both sides of the head. As a result of the way Nicosia used the forceps, Ronald's optic nerve controlling his right eye was severely damaged, resulting in an almost complete loss of eyesight in his right eye. This loss of eyesight continues to the present."

The instant action was filed on August 27, 1965, within two years of appellant's reaching majority, in reliance upon IC 1971, 34-1-2-5:

"Any person being under legal disabilities when the cause of action accrues may bring his action within two years after the disability is removed."

In response, appellee moved for judgment on the pleadings, contending that appellant's action was barred by IC 1971, 34-4-19-1:

"No action of any kind for damages, whether brought in contract or tort, based upon professional services rendered or which should have been rendered, shall be brought, commenced or maintained, in any of the courts of this state against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless said action is filed within two years from the date of the act, omission or neglect complaint of."

The trial court sustained appellee's motion since the transaction at issue had occurred twenty-two years prior to the filing of the complaint. The Court of Appeals, Third District, affirmed. 297 N. E. 2d 904.

Appellant urges here that the medical malpractice statute is unconstitutional on its face in that it grants special privileges and immunities to medical professionals which do not equally belong to all citizens.

Article 1, § 23 of our Constitution reads as follows:

"§ 23. *Privileges equal.*—The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The question of classification under the above section is primarily a question for the legislature. Legislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable. So long as the classification is based upon substantial distinctions with reference to the subject matter, we will not substitute our judgment for that of the legislature; nor will we inquire into the legislative motives prompting such classification:

"Laws which impose burdens and liabilities, or which grant privileges and immunities must be general in their nature, and not special; but a law is not necessarily special because it applies only to one class of persons to the exclusion of others. If the situation, conditions, and circumstances of the persons included within the class to which the law is made to apply so differ from those of others not so included, as to indicate the necessity or propriety of making the law applicable only to those included within its terms, and if the law is so framed as to apply to all to whom the reason applies and to exclude all whom the reason excludes, it will be deemed a general law. Such an act does not conflict with either * * * [the Fourteenth Amendment to the Federal Constitution or Art. 1, § 23 of the Constitution of Indiana]. Natural and reasonable classification is permitted; arbitrary selection is forbidden.

"The power of the legislature is not without limitations but, necessarily, this power must have a wide range of

discretion. There is no precise rule of reasonableness of classification, and the rule of equality permits many practical inequalities. A classification having some reasonable basis is not to be condemned merely because it is not framed with such mathematical nicety as to include all within the reason of the classification and to exclude all others. Exact exclusion and inclusion is impractical in legislation. It is almost impossible to provide for every exceptional and imaginary case, and a legislature ought not to be required to do so at the risk of having its legislation declared void, even though appropriate and proper as applied to the general subject upon which the law is intended to operate." *Cincinnati, etc., R. Co.* v. *McCullom* (1915), 183 Ind. 556, 561, 109 N. E. 206, 208 (citations omitted).

The classification at issue does not appear unconstitutional *per se.* There exists a reasonable basis for distinguishing between those rendering medical services and those who do not. Appellant has failed in his burden of showing in what way the two-year limitation period unduly discriminates in favor of medical practitioners. The presumption is in favor of a statute's validity until rebutted by proof of its irrationality.

However, a determination that a statute is constitutionally valid on its face does not end judicial inquiry into its application to particular facts. The limitation statute before us admits of *no* exceptions: *An action is barred unless brought within two years of the act complained of.* This statute's application to a given case must not be allowed to produce an absurd result, which the legislature, as a reasonably minded body, could not have possibly intended:

"With so wholesomely logical and intelligent a standard of interpretation, it would be illogical and unintelligent to say that a person who does not know, and cannot know, for example, that a suregon has negligently left a rubber tube in his body, would be denied damages because his claim for damages was filed, due to delay in learning of the presence of the tube, more than two years after the operation. * * *" *Ayres* v. *Morgan* (Pa. 1959), 154 A. 2d 788, 789.

Recognizing that a literal application of this limitation would result in possible inequity, this Court held in *Guy* v. *Schuldt et al.* (1956), 236 Ind. 101, 138 N. E. 2d 891, that fraudulent concealment would toll the medical malpractice statute.

Similarly, in *Guthrie* v. *Wilson* (1959), 240 Ind. 188, 162 N. E. 2d 79, we held that the medical malpractice statute would not apply retroactively to bar a minor's claim arising from neglect occurring prior to passage of the act.

The trial court sustained appellee's position on the basis of *Burd* v. *McCullough* (7th Cir. 1954), 217 F. 2d 159. This federal court case, interpreting Indiana law, held that because the medical malpractice statute and the legal disability statute were "clearly inconsistent," the former, being later in time, impliedly repealed the latter. Of course, federal cases interpreting state law are merely persuasive authority in this Court and we do not deem them controlling on questions of Indiana law.

The error in the *Burd* opinion is that the court proceeded on a faulty premise. In order for the federal court to find a repeal by implication, it was first necessary to find "irreconcilable conflict" between the two statutory provisions. This conflict simply does not exist. These statutes do not necessarily run concurrently. The legal disability statute does not come into play until after the medical malpractice statute has run. The legal disability provision does not in any sense "toll" the statute of limitations. It merely provides a reasonable grace period within which to sue once a disability is removed. The legal disability statute is *not* a statute of limitation, but is instead a legislative recognition of an exception to an otherwise absolute bar on medical malpractice suits. To construe the medical malpractice statute as a legislative bar on all malpractice actions under all circumstances unless commenced within two years from the act complained of (discoverable or otherwise) would raise substantial questions under the Article 1, § 12 guarantee

of open courts and redress for injury to every man, not to mention the offense to lay concepts of justice.

The potentially harsh results under the Court of Appeals opinion should not be ignored. This is perhaps the most compelling argument in favor of the appellant's position. Unless the malpractice act, omission, or neglect complained of happens to occur within two years of the minor's reaching his majority, he may effectively be deprived of his cause of action. This extraordinarily harsh result would be particularly inconsistent with the legislature's intention in creating this particular legal disability—that is, the protection of minors.

This construction of the statutes at issue in the case at bar is founded upon the only logical basis. It makes practical sense particularly with respect to infants who, because of their youth, cannot be expected to articulate their physical and mental condition or to realize and act timely to preserve their legal rights. It is not difficult to conceive of situations where the results of medical malpractice upon an infant could remain undiscovered for a number of years.

We recognize that by way of dicta in *Guy* v. *Schuldt et al.*, *supra*, Chief Justice Arterburn stated that the medical malpractice statute, being clear and unambiguous, was not susceptible to exception. However, such broad statement was not necessary to the holding in *Guy*, and, to the extent it appears inconsistent with this opinion, it is, to that extent, distinguished and modified.

Transfer is granted and the cause is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DeBruler, Givan and Prentice, JJ., concur; Arterburn, C.J., concurs in result, with opinion.

OPINION CONCURRING IN RESULT

ARTERBURN, C.J.—I do not agree with the reasoning presented in the majority opinion. I feel the statute of 1941

having a two-year statute of limitation against actions for medical malpractice is unconstitutional *on its face* since it grants special privileges and immunities to the medical profession, were it to stand by itself. However, I find that in its application in relation to the other statutes in Indiana, it is not special legislation. The 1941 Act was passed to clarify the previous legislation on statutory limitations for personal injuries which was for two years. There was considerable confusion at the time as to whether or not the action of malpractice was brought in tort (with a two-year limitation) or in contract (with a six-year limitation). The 1941 Act which we are considering here merely clarified the existing confusion by providing for the two-year statute of limitation "whether brought in contract or in tort." In view of this historical background, I would hold that although the Act of 1941 appears on its face to be in violation of the Indiana Constitutional provisions against special legislation, when viewed in its background and its purpose it merely placed malpractice acts within a statutory limitation of two years as in all cases in all actions "for injuries to person. . . ." It thus gave medical malpractice acts no special consideration as to the statute of limitations over those of other personal injuries by other individuals. For that reason I found the Act not unconstitutional when viewed with existing statutes. It gives the medical profession no special privileges over those of other persons.

Considering the 1941 Act as merely amendatory, or clarifying the general statute of limitations on personal injuries, it, therefore, follows that the statute giving minors an extended time within which to file a cause of action for personal injuries is applicable to all the statutes alike including the 1941 Act. I would therefore reverse and remand as the majority opinion, but for different reasons.

NOTE.—Reported in 310 N. E. 2d 867.