SARAH VIRGINIA HORNIG *vs.* ARTHUR WILLIAM HORNIG.

Middlesex.    March 15, 1978. — March 22, 1978.

Present: KEVILLE, GRANT, & ARMSTRONG, JJ.

*Limitations, Statute of. Incompetent Person,* Statute of limitations.
*Words,* "Insane."

The word "insane," appearing in the provisions of G. L. c. 260, § 7,
    relating to tolling of the statute of limitations, comprehends within
    its scope any mental condition which precludes the plaintiff's un-
    derstanding the nature or effects of his acts. [110-112]
In an action by a wife to set aside a deed, by which she conveyed real
    estate to her husband, the findings of the judge warranted a conclu-
    sion that the wife was "insane" within the meaning of G. L. c. 260,
    § 7, at the time of the deed and until some later point within the
    period of the applicable statute of limitations. [112-114]

CIVIL ACTION commenced in the Probate Court for the
county of Middlesex on May 13, 1976.

The case was heard by *Martin,* J.

The case was submitted on briefs.

*Philip S. Shaw & Edward M. Mahlowitz* for the defend-
ant.

*Shirley D. Bayle* for the plaintiff.

GRANT, J. The plaintiff seeks by the present action to
set aside a deed dated and executed on January 4, 1969,
by which she conveyed to the defendant all her interest
in certain premises in Lexington. The complaint alleges,
and the case appears to have been tried on the theory,
that the deed was procured by the defendant's exercise of
undue influence on the plaintiff and that the exercise of
such influence was facilitated by the plaintiff's mental
condition at the time the deed was executed.[1] The com-

---

[1] See *Lyons* v. *Elston,* 211 Mass. 478, 481–482 (1912); *Adams* v. *Whit-
more,* 245 Mass. 65, 68–69 (1923); *Brodie* v. *Evirs,* 313 Mass. 741, 743–
745 (1943).

plaint was not filed in the Probate Court for Middlesex County until May 13, 1976, and the defendant's answer asserts, among other things, that the plaintiff's claim "is outlawed by the terms of the applicable statue of limitations, i.e., M.G.L. Chapter 260." The judge made findings favorable to the plaintiff, ruled that the "[s]tatute of limitations does not run against one seeking equitable relief if delay in seeking such relief is attributable to mental disability of the petitioner," and ordered the entry of a judgment declaring the deed null and void. The defendant has appealed.[2] The evidence is not reported.

The first question argued by the parties in their briefs is whether the applicable period of limitations is the twenty-year period found in G. L. c. 260, § 21, as the plaintiff contends (see *Hill* v. *Peterson*, 323 Mass. 384, 387 [1948]), or the two-year period found in G. L. c. 260, § 2A (as in effect prior to St. 1973, c. 777, § 1), as the defendant contends. As it will make no difference in the ultimate disposition of this case, we shall assume without deciding that the two-year period applies. That assumption brings us to the core question whether, on the record before us, the plaintiff is entitled to the benefit of G. L. c. 260, § 7, which provides: "If the person entitled thereto is . . . *insane* . . . when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed" (emphasis supplied).[3]

---

[2] As no final judgment has been entered, the appeal will have to be dismissed. See and compare *Sanguinetti* v. *Nantucket Constr. Co.,* 5 *Mass. App. Ct.* 227, 228, 239 (1977).

[3] The plaintiff, who has the burden of proving facts which will take the case out of the statute of limitations (*Friedman* v. *Jablonski*, 371 Mass. 482, 487 [1976]), has not sought to invoke the provisions of G. L. c. 260, § 12. Nor has the plaintiff sought to invoke the rule which prevails in some jurisdictions that the statute is tolled with respect to a cause of action grounded on undue influence for as long as that influence persists (see *Spiva* v. *Boyd*, 206 Ala. 536, 539 [1921]; *Mullins*

Hornig *v.* Hornig.

The word "insane" as employed in § 7 is not now, nor has it ever been, defined by any of our successive legislative bodies.[4] There is no case in Massachusetts which discusses the meaning of the word for the purpose of § 7. However, there are numerous cases in other jurisdictions in which it has been held that the word "insane" appearing in statutory provisions comparable to those of § 7 comprehends within its scope any mental condition which precludes the plaintiff's understanding the nature or effects of his acts. See, e.g., *Pearl* v. *Pearl*, 177 Cal. 303, 306–307 (1918); *Wade* v. *Busby*, 66 Cal. App. 2d 700, 702–703 (1944); *Gottesman* v. *Simon*, 169 Cal. App. 2d 494, 498 (1959); *Hsu* v. *Mt. Zion Hosp.*, 259 Cal. App. 2d 562, 571 (1968); *Barnett* v. *Ashley*, 89 Ga. App. 679, 681 682 (1954); *Christian* v. *Waialua Agricultural Co.*, 31 Haw. 817, 901–902 (1931); *Peach* v. *Peach*, 73 Ill. App. 2d 72, 81, 83 (1966); *Valisano* v. *Chicago & Northwestern Ry.*, 247 Mich. 301, 303–304 (1929); *Hill* v. *Clark Equip. Co.*, 42 Mich. App. 405, 408, 411, 412–413 (1972); *Kyle* v. *Green Acres at Verona, Inc.*, 44 N.J. 100, 105, 112–113 (1965); *Sobin* v. *M. Frisch & Sons*, 108 N.J. Super. 99, 103–104 (1969); *Hurd*

---

v. *Barrett*, 204 Ga. 11, 15 [1948]; *Hughes* v. *Silvers*, 169 Iowa 366, 376 [1915]; *Howard* v. *Carter*, 71 Kan. 85, 91 [1905]; *Eureka Bank* v. *Bay*, 90 Kans. 506, 509 [1913]; *Bither* v. *Packard*, 115 Me. 306, 315 [1916]; *Aldrich* v. *Steen*, 71 Neb. 33, 52 [1904]; *Oldham* v. *Oldham*, 58 N.C. 89, 92 [1859]; *Little* v. *Bank of Wadesboro*, 187 N.C. 1, 6 [1924]; *Besteiro* v. *Besteiro*, 45 S.W.2d 379, 386 [Tex. Civ. App. 1931]; *Cadena* v. *Cadena*, 223 S.W.2d 678, 681 [Tex. Civ. App. 1949]; *McNeill* v. *Lovelace*, 529 S.W.2d 633, 637 [Tex. Civ. App. 1975]; contra, *Marshall* v. *Packard-Bell Co.*, 106 Cal. App. 2d 770, 774 [1951]; *Adoption of Sewall*, 242 Cal. App. 2d 208, 218 n.1 [1966]; *Keyton* v. *Downey*, 81 Ind. App. 431, 432 [1924]), perhaps because the judge's findings do not disclose any contact or communication between the parties since the day following the execution of the deed in question.

[4] The word "insane" made its first appearance in Rev. St. (1836) c. 120, § 6, when it was substituted for the words "non compos mentis" which had originally appeared in St. 1740, c. 4 § 4, and were then carried through St. 1748, c. 17, § 2, and St. 1770, c. 9, § 6, to St. 1786, c. 52. Since 1836 it has appeared without modification or qualification in: Gen. Stat. (1860) c. 155, § 6; Pub. Stat. (1882) c. 197, § 9; R.L. (1902) c. 202, § 7; and G.L. (1921) c. 260, § 7.

v. *County of Allegany,* 39 App. Div. 2d 499, 502–503 (N.Y. 1972); *Burnham* v. *Mitchell,* 34 Wis. 117, 134, 136–137 (1874). We know of no reason why that word should be given any narrower meaning when used in G. L. c. 260, § 7.

Having reached that conclusion, we turn to the portions of the present record which shed light on the question whether the plaintiff was "insane" when she executed the deed in question and thereafter. Of particular concern are the findings of the trial judge, the relevant portions of which will now be summarized or quoted.[5]

The parties were married in California in 1949 and moved to Lexington in 1962, where they acquired title as tenants by the entirety to a house and three acres of land. In 1963 their fourth child was delivered stillborn. "In 1964 [The plaintiff] sought psychiatric assistance; she has since been continuously receiving psychiatric assistance." In 1965 the parties acquired title as tenants by the entirety to an adjoining eleven acres of land. In 1966 the plaintiff filed a petition for separate support, which was dismissed by agreement of the parties in 1967.

On September 6, 1968, the plaintiff attempted suicide while in the office of a psychiatrist.[6] A police officer was summoned, and the plaintiff somehow relieved the officer of his service revolver. That incident led the officer's filing a criminal complaint against the plaintiff in a District Court for assault by means of a dangerous weapon. The assistant superintendent of the Westborough State Hospital, to which the plaintiff was sent for twenty days of observation, reported his diagnosis as "Personality Disorder, Hysterical Personality, with marked dramatization of ideation, bizarre oedipal attachments and marked acting out." The plaintiff was convicted despite her plea of

---

[5] No useful purpose would be served by summarizing the findings on the undue influence exerted by the defendant.

[6] The fact of attempted suicide on this date is gleaned from an admission in the pleadings.

insanity and placed on probation for two years. The terms of the probation were that she was ordered to leave her family and go to California, where she was to seek psychiatric treatment, and not return to Massachusetts for two years. The plaintiff did not appeal and left for California. In two letters which the defendant sent her while she was there he recognized that she was then suffering from "depressions."

The plaintiff secured permission from the District Court to return for a visit with her family in Lexington for the period from December 21, 1968, until January 5, 1969. It was on the day before her scheduled return to California that the plaintiff executed and acknowledged the deed of the entire premises. "[The plaintiff] remembers absolutely nothing about either the . . . execution [or acknowledgement] of the deed." She "had no benefit of counsel" and "did not fully realize what had happened until [the defendant] filed his [c]omplaint for [d]ivorce on November 18, 1974."[7] The plaintiff "was and still is in constant need of psychiatric help;" her "emotional and mental well being were and still are limited to the extent that she never had a clear-cut realization of just what . . . transpired"; and she "was under mental and emotional handicaps of such magnitude as to prevent her from acting as her own free agent."

None of those findings is inconsistent with any other; nor is there any basis for pronouncing any of them plainly wrong. We are of the opinion that they warranted (if they did not require) the further findings that the plaintiff was "insane" within the meaning of G. L. c. 260, § 7, at the time of the deed and until some point within two years of the commencement of the action which are implicit in the judge's ruling that the action was not barred by the statute of limitations. That the judge phrased his ruling in terms of the "mental disability of the petition-

---

[7] It will be noted that this date was within two years of the date on which the present action was commenced.

er" rather than in terms of her being "insane" is of no present consequence, as the basic requirement of § 7 had already been fulfilled.

All that remains to be performed is the entry of a formal judgment consistent with the order for judgment dated September 14, 1976.[8]

*Appeal dismissed*

---

[8] The order for judgment must first be scrutinized with a view to reconciling apparent discrepancies between it and the judge's findings as to the book in which the 1962 deed to the parties is recorded and the page at which the 1965 deed is recorded.