JOSEPH J. SACCHI, APPELLANT, V. JOHN L. BLODIG ET
AL., APPELLEES.
341 N.W.2d 326

Filed December 9, 1983. No. 82-301.

Richard J. Dinsmore, and Breeling, Welling and
Place, for appellant.

Lyman L. Larsen and William M. Lamson, Jr., of
Kennedy, Holland, DeLacy & Svoboda, for appellee
Blodig.

Bren L. Buckley of Cline, Williams, Wright, John-
son & Oldfather, for appellee Hospital.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS,
CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Joseph J. Sacchi appeals from a summary judg-
ment granted to the defendant physician, John L.
Blodig, and the defendant hospital, Creighton Me-
morial St. Joseph's Hospital, Inc. (Hospital). Sum-
mary judgment was granted upon the allegations

contained in the pleadings. We reverse and remand for further proceedings.

Upon a motion for summary judgment a court examines the evidence to discover if any real issue of fact exists, takes that view of the evidence most favorable to the party against whom the motion is directed, and gives to that party the benefit of all favorable inferences which may reasonably be drawn from the evidence. *Bank of Valley v. Shunk*, 208 Neb. 200, 302 N.W.2d 711 (1981).

On September 6, 1967, Sacchi engaged the professional services of Blodig, a doctor of psychiatric medicine, for treatment of severe depression. Sacchi was admitted to the Hospital on October 31, and on November 4 Blodig diagnosed Sacchi's condition as "acute psychotic paranoid reaction." Blodig's treatment of Sacchi included 11 episodes of "electroshock therapy" from November 4 to November 24. On January 9, 1968, Sacchi was dismissed from the Hospital but remained under the care of Blodig until September 13, 1968, when Blodig readmitted Sacchi to the Hospital. Blodig's diagnosis on this readmission was "schizophrenic reaction, paranoid type." Blodig kept Sacchi in the Hospital until November 10, when Sacchi was discharged from Blodig's care and was dismissed from the Hospital. There was no service rendered by Blodig or the Hospital after November 10, 1968. Sacchi's "mental illness resulting in mental incompetency" was removed September 30, 1979. Sacchi filed his petition on September 17, 1980, which alleged that Blodig and the Hospital collaborated in a negligent diagnosis that Sacchi's condition was a psychosis, whereas Sacchi's true condition was mental incompetence attributable to a physical problem and not a mental disorder as diagnosed. Blodig and the Hospital filed separate motions for summary judgment, and each claimed that Sacchi's cause of action was barred by the statute of limitations under Neb. Rev. Stat. § 25-222 (Reissue 1979). The trial court sustained

the motions for summary judgment, and Sacchi appeals from that ruling. Sacchi claims that, as a result of Neb. Rev. Stat. § 25-213 (Reissue 1979), his insanity tolled the statute of limitations and that § 25-222 permitted him to file his petition within 1 year from the removal of his disability. Blodig and the Hospital counter that Sacchi's cause of action is barred by § 25-222 because the petition was not filed within 10 years from the date of the last service rendered on November 10, 1968.

The issues involve interpretations of two statutes, namely, (1) whether the legal disability of insanity (§ 25-213) tolls the statute of limitations prescribed by § 25-222 and (2) whether § 25-222 is a statute of unconditional repose so that any cause of action based on professional negligence is absolutely barred at the expiration of 10 years from the rendition of or failure to render the service which is the basis of the action.

Nebraska adopted the "discovery rule" by *Spath v. Morrow*, 174 Neb. 38, 43, 115 N.W.2d 581, 585 (1962): "[T]he cause of action . . . did not accrue until the plaintiff discovered, or in the exercise of reasonable diligence should have discovered [the malpractice] . . ." and no time limit was specified for such discovery. Seven years later the "discovery rule" was reiterated in *Acker v. Sorensen*, 183 Neb. 866, 872, 165 N.W.2d 74, 77 (1969): "This court is already committed to the discovery rule" (citing *Spath v. Morrow, supra*), but there still was no specified time during which discovery must be made.

With that background, § 25-222 was enacted in 1972, namely: "Professional negligence; limitation of action. Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services

providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further*, that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action."

A decade after enactment of § 25-222, this court reaffirmed the discovery rule in *Colton v. Dewey*, 212 Neb. 126, 130, 321 N.W.2d 913, 916 (1982), when, after referring to *Spath v. Morrow*, *supra*, we stated: "[A]n action for malpractice did not accrue until a patient discovered, or in the exercise of reasonable diligence should have discovered, the malpractice. Thereafter, the Legislature limited that period of discovery to 10 years."

An examination of the statute discloses that § 25-222 consists of one sentence with three distinct but interrelated parts in reference to knowledge affecting a cause of action under our discovery rule. First, there is that knowledge at the time of the occurrence. Such knowledge imposes the basic time limit of 2 years for commencement of the action. Second, there is the situation involving unknown malpractice which is later discovered or discoverable, that is, which becomes known or is knowable at some point in the future following the malpractice. In that situation the "discovery rule" applies and the 1-year period for filing the action is triggered (*Spath* and *Acker*). Third, there is the period during which a claimant shall have acquired knowledge within 10 years after the malpractice and shall have acted or the claimant will suffer the con-

sequence that the cause of action is barred (*Colton*). In this manner § 25-222 is a codification of the judicially developed "discovery rule," with a legislated limit of a previously unspecified time for discovering a cause of action.

Throughout this judicial and legislative development of the discovery rule,.§ 25-213 has existed in the following form: "Actions by infants, persons insane or imprisoned; by or against nonresidents; exception comprehensive curative act. Except as provided in sections 76-288 to 76-298, if a person entitled to bring any action mentioned in this chapter, Chapter 23, article 24, and sections 81-8,209 to 81-8,239, except for a penalty or forfeiture, or for the recovery of the title or possession of lands, tenements or hereditaments, or for the foreclosure of mortgages thereon, be, at the time the cause of action accrued, within the age of twenty years, insane or imprisoned, every such person shall be entitled to bring such action within the respective times limited by this chapter after such disability shall be removed . . . ."

Before examining the effect of a legal disability upon the time limits found in § 25-222, we must first reach the meaning of *insane* used in § 25-213. In 54 C.J.S. *Limitations of Actions* § 242 at 269 (1948), there is the statement: "The term 'insane' . . . has been given a generic, rather than a technical, meaning, and has been held to mean such a condition of mental derangement as actually to bar the sufferer from comprehending rights which he is otherwise bound to know . . . ." See, also, *Gottesman v. Simon*, 169 Cal. App. 2d 494, 337 P.2d 906 (1959); *Hornig v. Hornig*, 6 Mass. App. 109, 374 N.E.2d 289 (1978); *Mtr. of Hurd v. County of Allegany*, 39 A.D.2d 499, 336 N.Y.S.2d 952 (1972). For the purpose of § 25-213 the word *insane* means such condition of mental derangement which actually prevents the sufferer from understanding his or her legal rights or instituting legal action. See *Kyle v. Green Acres*

*at Verona, Inc.*, 44 N.J. 100, 207 A.2d 513 (1965). Insanity within § 25-213 results in an incapacity which disqualifies one from acting for the protection of one's rights. See, *Wescott v. Upham*, 127 Wis. 590, 107 N.W. 2 (1906); *Western Coal & Min. Co. v. Hilvert*, 63 Ariz. 171, 160 P.2d 331 (1945); *Terre Haute, etc., Traction Co. v. Reeves*, 58 Ind. App. 326, 108 N.E. 275 (1915).

*Discovery*, as used in our "discovery rule," means that an individual acquires knowledge of a fact which existed but which was previously unknown to the discoverer. See, *Myers v. Stratmann*, 245 Iowa 1060, 65 N.W.2d 356 (1954); *In re Mangan's Will*, 83 N.Y.S.2d 393 (Broome Co. Sur. Ct. 1948).

According to the allegations in the pleadings, Blodig diagnosed Sacchi's condition as an acute psychotic paranoid reaction and schizophrenic reaction, paranoid type, and treated Sacchi from October 1967 to November 1968. Some of the treatment included 11 "electroshock" episodes and 130 days of confinement in the Hospital. Sacchi's condition persisted until November 1979. From such alleged circumstances it is a reasonable inference that Sacchi's condition may have come within the insanity provisions of § 25-213. It would be a legal paradox to state that the insane are required to learn and comprehend facts which would put persons of ordinary intelligence and prudence on inquiry for discovery of malpractice. Clearly, the purpose of § 25-213 is to lift the burden of severe time restrictions or limitations from those under legal disability, that is, from those who do not have the ability and capacity to protect their rights existing under our laws. Therefore, in keeping with our discovery rule to prevent manifest injustice, a person under a legal disability described in § 25-213 is exempted from the provisions of § 25-222 until the legal disability is removed. In the case at hand, if Sacchi is such a person within § 25-213, then the action was commenced within 1 year after removal of his legal disability. Such de-

termination of fact must be made, and for this reason further proceedings are required in the District Court.

Assuming that the contention of Blodig and the Hospital were correct and that the time limit in § 25-222 is a statute of repose rather than a codification of the discovery rule, the fact remains that a cause of action for professional negligence exists at common law. We note that § 25-213 has been amended twice in recent years—once in 1972, which is the same year § 25-222 was enacted, and again in 1974. None of those amendments excluded professional negligence from the operation and effect of § 25-213, although such statute regarding persons under legal disability does exclude certain situations from the effect of § 25-213. By omitting professional negligence from those excluded situations mentioned in § 25-213, the Legislature has dictated that the time limits for commencing an action based on malpractice shall not apply to persons under legal disability. Persons suffering mental derangement cannot be expected to evaluate and communicate information so that their rights can be protected and enforced. Nebraska has a long-standing policy of protection extended to those under legal disability who are, therefore, unable to help themselves. Were the limitation urged by Blodig and the Hospital accepted, such drastic and draconian definitude for commencement of an action would effectively eliminate a cause of action of one unable to protect himself or herself. See, *Braden v. Yoder*, 592 S.W.2d 896 (Tenn. App. 1979); *Parlato v. Howe*, 470 F. Supp. 996 (E.D. Tenn. 1979); *Chaffin v. Nicosia*, 261 Ind. 698, 310 N.E.2d 867 (1974). Any repose effectuated by expiration of 10 years from rendition of or failure to render service, as stated in § 25-222, is neither absolute nor unconditional, for a person suffering a legal disability, as described in § 25-213, upon removal of the legal disability can commence an action for professional negligence as provided under Nebraska law.

It was error to enter a summary judgment that Sacchi's cause of action was barred by the statute of limitations. For this reason the judgment of the District Court is reversed and the cause is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

KRIVOSHA, C.J., concurring.

I concur in the result reached by the majority in this opinion. I write separately, however, because I believe that, for the reasons noted by the majority, *any* effort by the Legislature to bar a cause of action before it has been discovered, or in the exercise of reasonable diligence could be discovered, would be to deny a class of persons both equal protection of the law and due process in violation of both their state and federal constitutional rights. In *Brinkerhoff-Faris Co. v. Hill*, 281 U.S. 673, 682, 50 S. Ct. 451, 74 L. Ed. 1107 (1930), the U.S. Supreme Court said: "Whether acting through its judiciary or through its legislature, a State may not deprive a person of all existing remedies for the enforcement of a right, which the State has no power to destroy, unless there is, or was, afforded to him some *real* opportunity to protect it." (Emphasis supplied.) See, also, *Moore v. Jackson Park Hosp.*, 95 Ill. 2d 223, 447 N.E.2d 408 (1983). What greater action can be taken by a Legislature to deny an individual a real opportunity to protect a right than to bar the institution of such an action even before the injured party knows or, with the exercise of reasonable diligence, could know that such a right exists.

Whenever the Legislature has adopted a new statute of limitations, courts have required that the injured person be afforded a reasonable period of time in which to seek redress. See, *Educational Service Unit No. 3 v. Mammel, O., S., H. & S., Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974); *Horbach v. Miller*, 4 Neb. 31 (1875); *Central Missouri Tel. Co. v. Conwell*, 170 F.2d 641 (8th Cir. 1948). Logic therefore would seem

to tell us that if one knowing of the existence of a cause of action must be given a reasonable period of time to file suit, one cannot have that right legislatively extinguished before the individual either knows of the right or, with the exercise of reasonable diligence, could know of such right.

BOSLAUGH, J., dissenting.

The majority opinion concludes that Neb. Rev. Stat. § 25-222 (Reissue 1979) codifies the discovery rule and therefore permits the legal disabilities of insanity and infancy when applicable to toll the running of § 25-222 such that an action may be brought even after 10 years has passed from the date of the alleged negligent act or omission. See Neb. Rev. Stat. § 25-213 (Reissue 1979). This is an incorrect interpretation of § 25-222, which is a statute of ultimate repose requiring all actions based upon a claim of professional negligence to be brought within 10 years.

Section 25-222 provides: "Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further*, that *in no event* may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action." (Emphasis supplied.)

The legislative history of 1972 Neb. Laws, L.B. 1132, codified as § 25-222, reveals that the Legislature clearly intended to create an absolute limit of 10 years within which an action for professional negligence must be brought. All such actions will be barred if brought after that time, despite the presence of any applicable infancy or insanity.

The committee statement, Committee on Judiciary, L.B. 1132, 82d Leg., 2d Sess. (Jan. 31, 1972), states: "This bill would place an overall limitation of 6 years [later amended to 10 years] in which an action is to be brought or it would be barred. . . . [N]o action could be brought *in any case* after 6 years had passed." (Emphasis supplied.) In the floor debate on February 25, 1972, Senator Carstens, who introduced the bill, explained the purpose of L.B. 1132 as follows at 4573-74: "At the present time, there is no upper amendment [sic] or outside limit of time in which action may be brought. It can be brought ten years or fifteen years after the alledged [sic] act of negligence has occurred. And this bill would limit . . . It places an *overall limitation* . . . on the statute of limitation." (Emphasis supplied.)

Throughout the legislative history, the legislative concern with prevention of stale claims, particularly those involving medical malpractice, is apparent. In the introducer's statement of purpose the following appears: "Physicians and surgeons need some type protection to prevent actions being brought long after the incident of alleged malpractice took place, when the incident is so remote that it is difficult for the physician or surgeon to protect himself, and defend himself, from the charges because the evidence has been lost, the witnesses who would know are gone, no defense is available because the defenses which existed have been erased by the passage of time."

From this history it can be concluded that the Legislature intended that § 25-222 bar all suits if not

brought within the 10-year time limit. The statute therefore limits to 10 years the time during which the infancy and insanity provisions of the earlier enacted § 25-213 would permit an action to be brought. See *Colton v. Dewey*, 212 Neb. 126, 321 N.W.2d 913 (1982).

In *O'Connor v. Abraham Altus*, 67 N.J. 106, 335 A.2d 545 (1975), the court reached the same conclusion in determining the application of the tolling statute for infancy and insanity to a statute which required that certain actions against architects be brought within 10 years. "From this it follows that in our view the legislature did not intend the ten-year period after construction to be 'expanded' by reason of one's infancy. This is not to say that the tolling statute is to be disregarded entirely. Rather, it seems reasonable — and serves the salutary purpose of harmonizing the statutes under examination — to conclude that the tolling statute will safeguard a remedy for a cause of action of the type affected by *N.J.S.A.* 2A:14-1.1 accruing during infancy, but only to the extent that the period within which suit must be brought against one included in the favored class does not extend beyond ten years after completion of construction." *Id.* at 123, 335 A.2d at 554. See, also, *DeLay v. Marathon LeTourneau Sales*, 48 Or. App. 811, 618 P.2d 11 (1980), *aff'd* 291 Or. 310, 630 P.2d 836 (1981); *Hill v. Forrest & Cotton, Inc.*, 555 S.W.2d 145 (Tex. Civ. App. 1977).

Application of the rules of statutory construction and interpretation warrant a conclusion that the enactment of § 25-222 did not incorporate the provisions of § 25-213 as an exception to the 10-year limit expressed in § 25-222. Rather, the Legislature intended to modify the provisions of § 25-213 as applied to professional malpractice cases. When a legislative act is complete in itself but is repugnant to or in conflict with a prior statute not referred to in the act, the earlier statute is repealed or modified by implication by the later act, to the extent of the

repugnancy or conflict. *Ferry v. Ferry*, 201 Neb. 595, 271 N.W.2d 450 (1978); *Connor v. City of Omaha*, 185 Neb. 146, 174 N.W.2d 205 (1970).

It is a well-settled rule of construction that special provisions in a law relating to a particular subject matter will prevail over general provisions, so far as there is a conflict. *State v. Cornell*, 53 Neb. 556, 74 N.W. 59 (1898). An act complete and independent in itself may incidentally amend, modify, or have impact upon the provisions of existing statutes without controverting the constitutional requirement that an amendatory act contain the section amended. *State ex rel. Douglas v. Gradwohl*, 194 Neb. 745, 235 N.W.2d 854 (1975).

Other courts have interpreted statutes similar to § 25-222 as providing absolute "outer limits" within which certain types of actions must be brought. Courts have also upheld these acts against claims that they violate a plaintiff's due process rights.

In *Mathis v. Eli Lilly and Co.*, 719 F.2d 134 (6th Cir. 1983), the court reviewed various decisions dealing with statutes which imposed an absolute time limit for bringing certain types of actions. That case involved a Tennessee statute of limitations that barred products liability actions against manufacturers and sellers more than 10 years after the product was purchased, which was held valid against claims that the statute violated due process. The court held the statute valid even though it effectively extinguished some claims before they could arise.

The court of appeals in the *Mathis* case cited with approval several cases in which it was held that language similar to that used in § 25-222 creates an absolute time limit after the expiration of which all claims are barred. "In *Hawkins*, plaintiff was injured in 1979 by an allegedly defective machine bought in 1966, and he filed suit within one year of the accident, which involved very serious permanently disabling injuries. Judge Wilson held that

the ten-year bar to the Tennessee statute precluded the suit. He described this statute as follows: 'TCA § 23-3703 is clearly not a conventional statute of limitation based upon the occurrence of an event giving rise to a cause of action. Instead it establishes an absolute limit of ten years from the date a product was sold for use or consumption after which all product liability actions are barred.' *Hawkins v. D & J Press Co.*, 527 F. Supp. at 388. He noted the legislative preface and held the law as 'clearly an attempt by the Legislature to create a reasonable time frame to enable manufacturers and distributors as well as their insurance carriers to calculate injury claims arising from the production of goods without compromising the rights of users or consumers of such goods to bring actions for damages within a reasonable number of years after the sale of the product. Although the proposed Uniform Product Liability Act (63 A.L.R.3d Product Liability § 221, 1980 Supplement) provides for a ten year limit without an absolute cutoff date, the Court cannot say that the Tennessee act which does provide an absolute limit would be impermissibly arbitrary. The Court also notes the existence of other absolute time limitations existing under Tennessee law which have been approved by the Tennessee Supreme Court . . . .' '' *Mathis, supra* at 140, quoting *Hawkins v. D & J Press Co., Inc.*, 527 F. Supp. 386 (E.D. Tenn. 1981).

The court in *Mathis, supra* at 140-41, went on to say: "In a comparable kind of situation, statutes of limitation barring suits against professionals such as architects and engineers after lapse of a specific period following the design, plan, supervision or construction have been upheld in federal courts despite the fact that the injury arising from a claimed defect may have occurred after the limitation period. The effect of holding such a state limitation bar valid is to preclude an injured party from suing a party claimed to be responsible, although his knowl-

edge of the defect, or his injury as a consequence of the effect, did not come about, or could not have come about, until after the statutory period prescribed. *See Wiggins v. Proctor & Schwartz*, 330 F. Supp. 350 (E.D. Va. 1971), *aff'd*, No. 71-1952 (4th Cir., 3/8/72, per curiam); *Smith v. Allen-Bradley Co.*, 371 F. Supp. 698 (W.D. Va. 1974); *Agus v. Future Chattanooga Dev. Corp.*, 358 F. Supp. 246 (E.D. Tenn. 1973)."

The court of appeals in *Mathis, supra* at 142-43, also cited with approval *Harrison v. Schrader*, 569 S.W.2d 822 (Tenn. 1978).

"In *Harrison v. Schrader, supra*, the Tennessee Supreme Court had upheld the constitutionality of the Medical Malpractice Act and the three-year limitation, set out in Tenn.Code Ann. § 23-3415(a), which reads, in pertinent part: 'in no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment . . . .' The Tennessee Supreme Court in a decision by its Chief Justice, now deceased, in *Harrison*, 569 S.W.2d at 824, observed: 'It should be noted at the outset that this is not a conventional statute of limitations. Rather it is an outer limit or ceiling superimposed upon the existing [negligence] statute . . . . Suits must be brought within one year from and after the date of the injury or damage, or the date such injury or damage was discovered, subject to the three-year ceiling fixed by Sec. 23-2415(a). *See Watts v. Putnam County*, 525 S.W.2d 488 (Tenn. 1975).'

"The Supreme Court concluded that the three-year 'outer limit or ceiling' was not demonstrably unreasonable and irrational even though it applied only to those suffering injuries from 'health care providers.' 569 S.W.2d at 825. There was a recognized 'medical malpractice insurance crisis,' and 'premiums had risen astronomically.' 569 S.W.2d at 826. The court observed, quoting from *Barnes v. Kyle*, 202 Tenn.

529, 535 (1957), that '[t]he constitutional guaranty providing for open courts and insuring a remedy for injuries does not guaranty a remedy for every species of injury, but applies only to such injuries as constitute violations of established law of which the courts can properly take cognizance.'

"In addition, the Tennessee Supreme Court in *Harrison v. Schrader*, 569 S.W.2d at 827, quoted with approval United States District Judge Frank Wilson's decision in *Hargraves v. Brackett Stripping Machine*, 317 F. Supp. at 682, that '[t]he legislative body, in enacting such legislation, may weigh the conflicting interests between one person's right to enforce an otherwise valid claim and another person's right to be confronted with any claim against him [within a reasonable time].' "

Section 25-222 was enacted as a statute of ultimate repose. In so doing, the Legislature sought to balance the rights of the injured party with the right of a defendant to protect himself from stale claims and to enable him to present an effective defense. While it may be considered unfortunate that in some cases the 10-year period will have run before suit can be brought, the legislative history reveals that the Legislature was aware that such events may occur. However, the Legislature intended to impose an absolute time bar in professional negligence cases rather than leave the time period somewhat open-ended. The majority opinion fails to give effect to the clear intentions of the Legislature with regard to § 25-222.

Hastings, J., joins in this dissent.