JOSE VERGARA, APPELLANT, V. ALFONSO LOPEZ-VASQUEZ, APPELLEE.

510 N.W.2d 551

Filed August 31, 1993. No. A-92-068.

1142

Michael B. Kratville, of Kratville Law Offices, for appellant.

John C. Wiltse for appellee.

Sievers, Chief Judge, and Irwin and Wright, Judges.

Wright, Judge.

Jose Vergara, who was employed as a recruitment counselor in the Office of Minority Student Affairs at the University of Nebraska Medical Center (UNMC), sued his former supervisor, Alfonso Lopez-Vasquez (Lopez), for libel and intentional infliction of emotional distress. The court granted summary judgment in favor of Lopez, and Vergara appeals.

## SCOPE OF REVIEW

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Professional Firefighters of Omaha v. City of Omaha*, 243 Neb. 166, 498 N.W.2d 325 (1993).

In appellate review of a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Sarpy County v. City of Springfield*, 241 Neb. 978, 492 N.W.2d 566 (1992).

A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. After the moving party has shown facts entitling it to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents judgment as a matter of law for the moving party. *Howard v. Blue Cross Blue Shield*, 242 Neb. 150, 494 N.W.2d 99 (1993).

## FACTS

On July 27, 1990, Vergara sued Lopez, alleging that Lopez

libeled Vergara and caused him emotional distress. In his amended petition, Vergara claimed that on or about June 5, 1989, Lopez, as Vergara's immediate supervisor, had prepared and communicated to third parties a memorandum which accused Vergara of "criminal offenses of moral turpitude" and "an imputed unfitness to perform the duties of his employment."

The memorandum stated the reasons that led to Lopez' decision to seek Vergara's separation from the Office of Minority Student Affairs. The first part of the memorandum described specific instances of Vergara's deficiencies in the performance of his work. The second part related instances which Lopez stated would violate UNMC's policies on sexual harassment. Lopez felt that Vergara lacked the interpersonal skills to effectively relate to minority students and that "[his] constant reference to sexually oriented topics has kept female students from coming to the MSA office."

A second cause of action asserted that Lopez' memorandum was intentional, reckless, and so outrageous as to shock the conscience of a reasonable person.

Lopez answered, claiming that Vergara's cause of action for libel was barred by the statute of limitations and that Vergara's petition failed to state a cause of action. Lopez denied that Vergara was under a mental disorder from March 24, 1989, to February 25, 1990, which would toll the statute of limitations.

The trial was bifurcated pursuant to Neb. Rev. Stat. § 25-221 (Reissue 1989) to determine the statute of limitations issue before any other issues were decided by the court. Lopez then filed a motion for summary judgment, and the court found that although Vergara alleged he suffered from a mental disorder, the evidence and any permissible inferences or conclusions drawn therefrom did not raise a genuine issue of fact that Vergara had a mental disorder that would toll the statute of limitations for libel. The court also determined as a matter of law that the evidence, including any permissible inferences or conclusions, did not show a genuine issue of fact that Lopez' conduct rose to the level of being so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency or to be regarded as atrocious and utterly intolerable in

a civilized community.

## ASSIGNMENTS OF ERROR

Vergara assigns as error the trial court's (1) granting of summary judgment for Lopez, (2) failure to estop Lopez from asserting the statute of limitations as an affirmative defense, (3) finding that there was no genuine issue of material fact as to whether Vergara was under a mental disorder within 1 year of commencing the action, and (4) finding that there was no genuine issue of material fact as to whether Lopez' conduct constituted a cause of action for the tort of outrage.

## ANALYSIS

Vergara did not file his petition until July 27, 1990, more than 1 year after he alleges that the libel occurred. His amended petition alleges that the memorandum was communicated to third parties on or about June 5, 1989. We view the evidence in the light most favorable to Vergara and give him the benefit of all reasonable inferences deducible from the evidence. See *Sarpy County v. City of Springfield*, 241 Neb. 978, 492 N.W.2d 566 (1992). Therefore, for purposes of our review, we consider Vergara's cause of action for libel to have accrued on June 5, 1989.

Under Neb. Rev. Stat. § 25-208 (Reissue 1989), an action for libel must be filed within 1 year. A cause of action for libel or slander accrues on the date of publication of the defamatory matter. *Lathrop v. McBride*, 209 Neb. 351, 307 N.W.2d 804 (1981). Publication of an allegedly libelous statement occurs when it is communicated to someone other than the person defamed. *Voit v. Madison Newspapers, Inc.*, 116 Wis. 2d 217, 341 N.W.2d 693 (Wis. 1984). Therefore, Vergara had to commence his action for libel on or before June 5, 1990, or show some excuse tolling the statute.

A person alleging a cause of action ostensibly barred by the statute of limitations must show some excuse tolling the operation and bar of the statute. *LaPan v. Myers*, 241 Neb. 790, 491 N.W.2d 46 (1992). The 1-year period for bringing a cause of action for libel may be tolled if the person bringing the action "is, at the time the cause of action accrued . . . a person with a mental disorder . . . ." Neb. Rev. Stat. § 25-213 (Reissue

1989). However, "every such person shall be entitled to bring such action within the respective times limited by this chapter after such disability is removed." *Id.* In 1986, the Legislature had substituted the phrase "a person with a mental disorder" for the word "insane." Vergara alleged he was under a mental disorder from May 24, 1989, to at least February 25, 1990, which if proven would toll the statute of limitations. Thus, if Vergara was suffering from a mental disorder as described in § 25-213, his time to bring his cause of action for libel would be extended by the equivalent number of days from May 24, 1989, to February 25, 1990.

The term "mental disorder" has not been defined by the Nebraska Supreme Court. In *Sacchi v. Blodig*, 215 Neb. 817, 821-22, 341 N.W.2d 326, 330 (1983), the Supreme Court discussed the meaning of the word "insane," as used in § 25-213:

> In 54 C.J.S. *Limitations of Actions* § 242 at 269 (1948), there is the statement: "The term 'insane' . . . has been given a generic, rather than a technical, meaning, and has been held to mean such a condition of mental derangement as actually to bar the sufferer from comprehending rights which he is otherwise bound to know : . . ." For the purpose of § 25-213 the word *insane* means such condition of mental derangement which actually prevents the sufferer from understanding his or her legal rights or instituting legal action. . . . Insanity within § 25-213 results in an incapacity which disqualifies one from acting for the protection of one's rights.

(Citations omitted.) Persons suffering mental derangement cannot be expected to evaluate and communicate information so that their rights can be protected and enforced. *Sacchi, supra.*

In *Shames v. State*, 192 Neb. 614, 620, 223 N.W.2d 481, 484 (1974), the court stated:

> " 'A mere change of phraseology, or punctuation, or the addition or omission of words in the revision or codification of statutes, does not necessarily change the operation or effect thereof, and will not be deemed to do so unless the intent to make such change is clear and

unmistakable. . . . No presumption arises from changes of this character that the revisers or the legislature in adopting the revision intended to change the existing law; but the presumption is to the contrary, unless an intent to change it clearly appears.' . . ."
(Emphasis omitted.)

We must therefore determine through legislative history whether the Legislature's change of the word "insane" to the term "mental disorder" was intended to broaden the class of individuals described within § 25-213.

The intent of this legislation is to replace obsolete language such as "imbecile," "idiot" and "lunatic" from statute where it appears and replace it with the terms commonly used today "persons with mental retardation" or "persons who are mentally incompetent".

The obsolete language demeans these persons who, through no fault of their own, find themselves with these conditions. The new language emphasizes that all of these persons are people first.

Statement of Intent, L.B. 1177, Health and Human Services Committee, 89th Leg., 2d Sess. (Feb. 18, 1986).

"This bill replaces terms in the statutes such as insane, imbecile, idiot, etc. with the terms mental incompetency, mental retardation, etc." Health and Human Services Committee Statement, L.B. 1177, 89th Leg., 2d Sess. (Feb. 18, 1986).

From our review of the legislative history, we find that the trial court correctly determined that the substitution of the term "mental disorder" for the word "insane" in § 25-213 did not change the legal standard involved. We find that a person with a mental disorder is one who suffers from a condition of mental derangement which actually prevents the sufferer from understanding his or her legal rights or from instituting legal action. A mental disorder within the meaning of § 25-213 is an incapacity which disqualifies one from acting for the protection of one's rights. See *Sacchi, supra.*

The issue is whether Vergara's alleged mental disorder tolled the statute of limitations for his cause of action for libel. We review the record to determine whether there is any material

fact or ultimate inference that may be drawn from those facts which, when viewed in a light most favorable to Vergara, would support his contention that he was suffering from a mental disorder that prevented him from understanding his legal rights or prevented him from instituting his action for libel within 1 year from May 24, 1989.

Vergara claimed that his mental disorder was manifested in his obsession with clearing his name. He stated that he could not concentrate, felt he was "mugged" by Lopez and other UNMC officials, and suffered from insomnia and other physical problems, including diarrhea. Vergara said that during the time of his disability, he was unable to function as he had previously and that he could not drive for several months. Although he said he was afraid to take long trips, the record shows that he had traveled to Boston, Massachusetts; Hanover, New Hampshire; Chicago, Illinois; and New York, New York, using an airline passport given to him by his daughter. For almost 1 year, he traveled once a week based on his doctor's recommendation that he keep a distance from Omaha.

The record further shows that during the time of Vergara's alleged mental disorder, he was able to renew his driver's license, write checks, pay his medical bills, and sign a claim for unemployment benefits. On June 9, 1989, Vergara contacted the U.S. Bureau of Health Professionals to tell the organization that he thought the funding it had given to Lopez was being wasted, and Vergara asked for an investigation of the program. He flew to New York to make arrangements for his retirement pay, which began in December 1989. In February 1990, he flew to California for a job interview and was offered a job, and on March 5, 1990, he accepted the offer, but he never commenced the employment because he did not find suitable housing.

During June and July 1989, Vergara requested numerous letters of support and traveled to Chicago to request one such letter. He visited Senator Robert Kerrey's office on several occasions on and after December 5, 1989, to ask for assistance. He wrote Representative Peter Hoagland on January 29, 1990, suggesting the formation of a committee to hear the employee's version in any labor dispute at UNMC, and he wrote to Kerrey on February 15, 1990, to request an investigation into UNMC's

hiring and firing practices.

These actions do not reflect the mental condition of a person who was suffering from a mental disorder which resulted in incapacity to protect his legal rights. Giving Vergara the benefit of all such reasonable inferences, we find that he did not suffer from a mental disorder at the time that his cause of action for libel accrued, which would have prevented him from enforcing his legal rights. The district court was correct in holding that Vergara's libel claim was barred by the statute of limitations.

Vergara also asserts that Lopez should be estopped from raising the statute of limitations as an affirmative defense because it was Lopez' memo which was the sole cause of Vergara's mental disorder. Because we have found that Vergara did not suffer from such a mental disorder at the time his cause of action accrued, we do not address this argument. The issue of estoppel has not been raised in the pleadings and will not be considered for the first time on appeal. An issue not presented to or passed on by the trial court is not appropriate for consideration on appeal. *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175 (1991).

Vergara's final argument is that the trial court erred in finding no genuine issue of material fact as to Vergara's cause of action for the tort of outrage. The tort of outrage is also known as the intentional infliction of emotional distress. *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985).

> To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that (1) there has been intentional or reckless conduct, (2) the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. . . . An extremely disabling emotional response is required.

(Citation omitted.) *Braesch v. Union Ins. Co.*, 237 Neb. 44, 60, 464 N.W.2d 769, 778-79 (1991).

We find that the trial court did not err in concluding there was no genuine issue of material fact concerning the claim for

emotional distress. The distribution of the memo was not reckless, but was carried out as part of an employee evaluation. The conduct of writing or distributing the memo was clearly not outrageous in character or so extreme as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable. Vergara may have suffered from emotional distress as a result of Lopez' memo, but we must measure the distress against that of a reasonable person. Anyone asked to leave a job amid allegations of incompetency may feel emotional distress. This, however, does not establish a cause of action for intentional infliction of emotional distress. The distress must be so severe that no reasonable person could be expected to endure it.

As a party moving for summary judgment, Lopez has met his burden to show that there was no genuine issue of material fact. Lopez produced sufficient evidence to demonstrate that he was entitled to judgment as a matter of law because the evidence presented for summary judgment remained uncontroverted. See *Howard v. State Farm Mut. Auto Ins. Co.*, 242 Neb. 624, 496 N.W.2d 862 (1993). The burden then shifted to Vergara to present evidence showing an issue of material fact which prevents judgment as a matter of law for Lopez. Vergara has failed to meet that burden. See *Howard v. Blue Cross Blue Shield*, 242 Neb. 150, 494 N.W.2d 99 (1993).

The trial court was correct in sustaining Lopez' motion for summary judgment. The judgment of the district court is affirmed.

AFFIRMED.