# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3154

_____

T. Mark Kraft,                              *
                                            *
            Appellant,                      *
                                            *       Appeal from the United States
      v.                                    *       District Court for the
                                            *       District of Nebraska.
St. John Lutheran Church of                 *
Seward, Nebraska, doing business            *
as St. John Lutheran School, Arlen          *       [PUBLISHED]
L. Meyer, The Estate of David               *
Mannigel, and Does 1-1000.                  *
                                            *
            Appellees.                      *


_____

Submitted: March 16, 2005
Filed: July 18, 2005

_____

Before WOLLMAN, HANSEN, and COLLOTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

      T. Mark Kraft alleges that he was repeatedly sexually abused by his teacher, Arlen L. Meyer, while Kraft was a junior-high student at St. John Lutheran School in Seward, Nebraska, in the late 1970s.  Kraft filed this lawsuit in 2002, seeking

damages in tort for the injuries caused by the abuse.  The district court[1] granted the defendants' motions for summary judgment, concluding that Kraft's lawsuit was barred by Nebraska's statute of limitation.  We affirm.

I.

In this summary judgment context, we view the facts and the inferences to be drawn from them in the light most favorable to Kraft, the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The district court found the following facts to be undisputed for purposes of summary judgment.  Arlen Meyer, a teacher at the St. John Lutheran School, sexually abused Mark Kraft on numerous occasions from 1976 through 1978, when Kraft was between the ages of 12 and 15 years old.  The last act of abuse may have occurred as late as 1980.  As a result of the abuse, Kraft suffers from emotional and psychological injury including posttraumatic distress disorder, dysthymic reaction, somataform disorder, complex trauma reaction, and dissociative disorder NOS, all resulting in symptoms of depression as well as problems with interpersonal relationships and maintaining monogamous relationships.

In 1990, Kraft disclosed the abuse to his wife and parents, after grappling with marital problems stemming largely from his homosexual behavior.  In 1991, Kraft made an anonymous report of Meyer's wrongful conduct to the St. John Lutheran School principal, David Mannigel,[2] warning that any special young friends of Meyer might be suffering sexual abuse.  Also in 1991, Kraft told two family friends of his

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

[2]Mannigel committed suicide in July 2001.  His estate is a named defendant, and the record, when viewed in the light most favorable to Kraft, supports an inference that Mannigel, too, was sexually abusing children.

abuse at the hands of Meyer out of concern for their grandchildren who then attended the school.

In 1995, Kraft discussed the abuse with a licensed professional counselor, Donna Stains. Her treatment notes indicate that Kraft told her he had sought counseling about the sexual abuse in 1991. Stains advised Kraft that there was a strong possibility that the sexual abuse he had suffered as a child was contributing to his current problems.

Kraft hired an attorney who wrote a letter to the school on October 29, 2001, in an attempt to have Meyer removed from his position at the school. The letter states that Kraft "is emotionally now able to publicly reveal the nature and circumstances of these acts and to pursue the appropriate redress for the conduct, if necessary." (R. at 52.) In January 2002, Kraft's attorney wrote to the principal again, stating in part that "Kraft is seeking compensation for injuries suffered by him as a result of acts committed by [Meyer]." (R. at 57.)

On May 16, 2002, Kraft's attorney referred Kraft for an evaluation with Dr. Fisch, a clinical psychologist. Dr. Fisch diagnosed Kraft with moderate to severe posttraumatic distress disorder, moderate to severe dysthymic reaction, moderate to severe fulminating somataform disorder, complex trauma reaction, and chronic fulminating dissociative disorder. Dr. Fisch's affidavit states that Kraft did not make a connection between the abuse and his mental disorders until after he had started his treatment with Dr. Fisch. Kraft's primary care physician, Dr. Cohen, also stated in a letter that Kraft did not understand the causal relationship between the abuse and his problems until he began his treatment with Dr. Fisch.

Kraft filed this lawsuit on October 30, 2002, seeking damages against the church, the congregation, the school, the principal, and Meyer. The district court

granted summary judgment in favor of the defendants, concluding that Kraft's complaint was not timely filed. Kraft appeals.

## II.

We review de novo the district court's grant of summary judgment, applying the same standards as the district court. Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th Cir. 1997). Summary judgment is appropriate if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's determination of state law de novo. See Salve Regina Coll. v. Russell, 499 U.S. 225, 231 (1991). Nebraska law applies to this diversity suit. Nebraska's four-year statute of limitations for tort actions, see Neb. Rev. Stat. § 25-207(3), is tolled for minors until they reach the age of 21, see Neb. Rev. Stat. § 25-213; Brown v. Kindred, 608 N.W.2d 577, 580 (Neb. 2000).

Kraft reached the age of 21 on August 13, 1985, but he did not file this lawsuit until October 2002, some seventeen years later. The district court dismissed his suit as untimely, finding no basis for tolling the limitations period. On appeal, Kraft asserts that factual disputes preclude entry of summary judgment. Namely, he contends that the limitations period should be equitably tolled on the ground that he did not discover a connection between the abuse and his problems until sometime within four years of the filing of the complaint, and that his mental disorders prevented him from pursuing legal action.

While an action in tort generally accrues as soon as the act occurs, Nebraska applies an equitable tolling doctrine referred to as the discovery rule in certain categories of cases where "the injury is not obvious and the individual is wholly unaware that he or she has suffered an injury or damage." See Schlien v. Bd. of Regents of the Univ. of Neb., 640 N.W.2d 643, 650 (Neb. 2002) (emphasis removed).

When this discovery rule is applicable, "the statute of limitations does not begin to run until the potential plaintiff discovers, or with reasonable diligence should have discovered, the injury." Id.; Condon v. A.H. Robins, Co., 349 N.W.2d 622, 627 (Neb. 1984). The Nebraska Supreme Court has explained that "[i]n the context of statutes of limitations, discovery refers to the fact that one knows of the existence of an injury or damage, regardless of whether there is awareness of a legal right to seek redress in court." Reinke Mfg. Co. v. Hayes, 590 N.W.2d 380, 390 (Neb. 1999) (internal quotation marks omitted, alteration in the original). Stated yet another way, "[d]iscovery of the act or omission occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of facts constituting the basis of the cause of action." Id. Nebraska has not yet applied this discovery rule in the context of a child sexual abuse case.

The district court applied the Schlien analysis, concluding that "no later than 1990, Kraft himself drew a direct link between the alleged abuse and a variety of behaviors and negative consequences in his life." (Appellant's Add. at 12-13.) Kraft argues that there was disputed evidence concerning when he actually discovered that the abuse caused his injuries.[3] The district court noted that the only evidence supporting Kraft's assertion were the statements of Dr. Fisch and Dr. Cohen, who both concluded that Kraft did not make the causal connection until his treatment with Dr. Fisch in 2002. We agree with the district court's conclusion that any assertion that Kraft was unaware of the connection between the abuse and his injuries until his treatment with Dr. Fisch in 2002 is disingenuous, for the reasons that follow.

Kraft only began treatment with Dr. Fisch after his settlement negotiations with the church had failed. The undisputed evidence concerning the settlement

---

[3]This case does not involve the discovery of a repressed memory. Kraft has always retained an awareness of the facts of the claimed abuse.

negotiations indicated that beginning in 2001, Kraft had been negotiating with the church for damages resulting from the sexual abuse. He cannot attempt to contradict his own behavior in 2001, seeking damages for injuries resulting from the sexual abuse, with expert testimony that he did not understand the same causal connection until 2002. Kraft asserts that the district court abused its discretion by considering these settlement negotiations because an offer to compromise "is not admissible to prove liability for or invalidity of the claim or its amount," and neither is "[e]vidence of conduct or statements made in compromise negotiations." Fed. R. Evid. 408. This evidence is admissible for other purposes, however, "such as proving bias or prejudice of a witness [or] negativing a contention of undue delay." Id. The district court did not abuse its discretion by considering Kraft's settlement negotiations with the church for the purpose of proving Kraft's knowledge of a causal connection between his injuries and the abuse.

Additionally, as noted by the district court, the undisputed evidence demonstrates that Kraft drew a direct connection between the abuse and his negative behaviors in 1990, when he disclosed the abuse to his wife and parents as an explanation for his marital discord and homosexual activity. Even if this incident, construed in the light most favorable to Kraft, does not disclose a true understanding of the causal connection, as Kraft asserts, the remaining undisputed evidence indicates that Kraft was aware of sufficient facts by 1995 at the latest, from which he could have, with reasonable diligence, discovered the causal connection. By that time, Kraft had told not only his family, but also friends, counselors, and the school principal about the abuse he had suffered; he was aware of his emotional and behavioral problems; and Stains had expressly suggested to him in counseling that there was a strong possibility that the sexual abuse he had suffered contributed to his current problems. These undisputed facts, all known to Kraft by 1995, were sufficient to put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would have led to the discovery of the connection between the abuse and the injuries. See Reinke Mfg. Co., 590 N.W.2d at 390. The fact that Kraft may not

have actually drawn the connection at that point or may not have understood the extent of his damages did not prevent the statute of limitations from running. See Rosnick v. Marks, 357 N.W.2d 186, 189 (Neb. 1984) ("A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain suit, although the nature and extent of the damages may not be known."). Thus, the discovery rule of equitable tolling does not preserve Kraft's cause of action.

The four-year statute of limitation for tort actions is also subject to tolling where a person is suffering from a mental disorder. See Neb. Rev. Stat. § 25-213. Dr. Fisch diagnosed Kraft with moderate to severe posttraumatic distress disorder, moderate to severe dysthymic reaction, moderate to severe fulminating somataform disorder, complex trauma reaction, and chronic fulminating dissociative disorder. Kraft argues that Dr. Fisch's uncontradicted expert testimony that these mental disorders prevented him from pursuing his legal rights creates a question of fact on the issue of whether the statute of limitation was tolled by Kraft's mental disorders. We respectfully disagree.

The district court determined as a matter of law that Kraft's disorders were not the type of mental disorders that are contemplated by the statute, because they do not render him incapable of understanding his legal rights or instituting legal action. See Vergara v. Lopez-Vasquez, 510 N.W.2d 550, 554 (Neb. Ct. App. 1993) ("[A] person with a mental disorder is one who suffers from a condition of mental derangement which actually prevents the sufferer from understanding his or her legal rights or from instituting legal action.") (holding that the change in the statutory language from "insanity" to "mental disorder" did not change the legal standard involved). Persons with a mental disorder sufficient to justify the tolling provision are not able to evaluate and communicate information necessary to protect their rights. Id. at 553.

It is undisputed that Kraft was able to communicate the facts of his abuse and evaluate at least some of its effects on his life since at least 1990, when he began telling others of the abuse and seeking counseling. The record demonstrates that Kraft is employed in banking as a manager of a staff of 13 or 14 mortgage loan officers. He has never been unemployed or missed any work because of his mental disorders. He handles his own business and financial affairs, makes his own health care decisions, and has never had a guardian or conservator appointed for him. Whether Kraft could adequately evaluate the entire extent of his psychological injuries is not the relevant question. The district court correctly determined that the mental disorders alleged by Kraft did not, in a legal sense, render him incapable of understanding his legal rights and acting to protect them.

## III

Accordingly, we affirm the district's court's grant of summary judgment dismissing Kraft's lawsuit as barred by the statute of limitations.

_____