Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/05/2022 09:08 AM CDT

Sandra K. Nieveen, appellant, v. TAX 106,
a Nebraska general partnership,
et al., appellees.

___ N.W.2d ___

Filed May 13, 2022.    No. S-21-364.

1. **Constitutional Law: Statutes.** The constitutionality of statutes and statutory interpretation present questions of law.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo by an appellate court, accepting the factual allegations in the complaint as true and drawing all reasonable inferences of law and fact in favor of the nonmoving party.
3. **Actions: Motions to Dismiss: Pleadings: Appeal and Error.** An appellate court reviewing a dismissal on the pleadings is not obliged to accept as true legal conclusions couched as factual allegations or threadbare recitals of the elements of a cause of action supported by mere conclusory statements.
4. **Equity: Quiet Title.** A quiet title action sounds in equity.
5. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict in a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

Appeal from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

Mark T. Bestul, Jennifer Gaughan, and Caitlin Cedfeldt, of Legal Aid of Nebraska, for appellant.

Christian R. Blunk, of Harris & Associates, P.C., L.L.O., for appellees TAX 106 and Vintage Management, LLC.

Patrick F. Condon, Lancaster County Attorney, and Eric Synowicki for appellees Lancaster County and Rachel Garver.

Douglas J. Peterson, Attorney General, and James A. Campbell, Solicitor General, for appellee Attorney General.

Heavican, C.J., Miller-Lerman, Cassel, Funke, Papik, and Freudenberg, JJ., and O'Gorman, District Judge.

Papik, J.

After Sandra K. Nieveen failed to pay her real property taxes, the Lancaster County treasurer sold a tax certificate for the property to a private party. Over 3 years later, when Nieveen had still not paid the relevant property taxes, the tax certificate holder applied for and obtained a tax deed to the property. Nieveen later filed a lawsuit in which she argued that she should be declared the owner of the property for various reasons. The district court denied Nieveen relief, finding that she did not qualify for an extended redemption period under Neb. Rev. Stat. § 77-1827 (Reissue 2018) and that the tax certificate sale process did not violate her constitutional rights under the U.S. and Nebraska Constitutions. Nieveen now appeals, but we find no error on the part of the district court and, thus, affirm.

## BACKGROUND

*Tax Certificate Sale and Deed Transfer.*

Nebraska utilizes tax certificate sales as one method of recouping delinquent property taxes. See, Neb. Rev. Stat. § 77-1801 et seq. (Reissue 2018); *Continental Resources v. Fair, ante* p. 184, 971 N.W.2d 313 (2022) (discussing statutes governing tax certificate sale process). Nieveen did not pay her 2013 property taxes. As a result, the Lancaster County treasurer, pursuant to Nebraska's tax certificate sale statutes,

sold a tax certificate for Nieveen's property to TAX 106 on March 2, 2015.

Three years after purchasing the tax certificate, TAX 106 began to take the procedural steps required by statute to request a tax deed from the Lancaster County treasurer for Nieveen's property. See § 77-1837. On March 2, 2018, TAX 106 sent a notice by certified mail to Nieveen of its intention to apply for a tax deed to the property in 3 months' time if she did not redeem the property by paying the taxes, interest, and fees. See § 77-1831.

TAX 106 assigned its interest in the tax certificate to Vintage Management, LLC (Vintage). In June 2018, after Nieveen failed to redeem the property within the time period set forth in TAX 106's notice, Vintage applied for and received a tax deed to Nieveen's property from the Lancaster County treasurer.

*Nieveen's Quiet Title Action.*

Nearly a year after the issuance of the tax deed to Vintage, Nieveen filed this lawsuit in which she sought to quiet title to the property in her name. The defendants included Lancaster County and the Lancaster County treasurer (collectively Lancaster County), as well as Vintage. Nieveen alleged that TAX 106 obtained the tax certificate by paying $2,390.48 for delinquent property taxes in 2013 and 2014 and that it paid an additional $1,405.90 in property taxes for 2015. Nieveen also alleged that at the time Lancaster County issued the tax deed, her property was assessed at $61,900, and that there was no deed of trust securing a mortgage on the property.

Nieveen alleged that the issuance of the tax deed had violated her rights under the U.S. and Nebraska Constitutions. Relevant to this appeal, Nieveen alleged that the issuance of the tax deed had violated her rights under the Due Process Clauses of the U.S. and Nebraska Constitutions, the Takings Clauses of the U.S. and Nebraska Constitutions, and the Excessive Fines Clauses of the U.S. and Nebraska Constitutions. She also alleged that she had a statutory right to a 5-year

redemption period under § 77-1827 because she had a mental disorder at the time of the tax certificate sale.

Lancaster County and Vintage filed motions to dismiss in which they contended that Nieveen's complaint failed to state a claim upon which relief could be granted. The district court granted the motions to dismiss as to Nieveen's constitutional claims.

After the dismissal of Nieveen's constitutional claims, her sole remaining claim was that title should be quieted in her name because she was entitled to an extended redemption period under § 77-1827. The district court granted summary judgment to Lancaster County on this claim, because Lancaster County did not claim an interest in the property at issue. The district court overruled Vintage's motion for summary judgment on that claim, finding that there remained genuine questions of material fact to be determined at trial.

*Trial Evidence.*

At trial, Nieveen offered evidence in support of her claim that she had a "mental disorder" for purposes of § 77-1827 at the time of the tax certificate sale. Nieveen testified that she had been diagnosed with "major depressive disorder, recurrent, severe," and generalized anxiety disorder.

Nieveen testified that she had dealt with depression and anxiety for 30 years, but that her condition had improved in 2018 after she started taking a new medication. She asserted that she would have been suffering from symptoms of depression and anxiety in 2015 because it "was no different than any other year" prior to beginning her new course of medication in 2018.

Nieveen testified that she experienced "good days" and "bad days" with respect to her depression and anxiety. Before she found an effective medication, she had more bad days than good days. On a bad day, Nieveen testified that she would stay at her house and sleep or watch television. During bad days, she would not pay bills or pick up her mail. She

testified that her mail would "build up" to such an extent that postal workers would "bundle it up and throw it on [her] back porch or . . . take it back to the post office" and warn her that if she did not start "picking up" her mail, they would no longer deliver to her house. Nieveen claimed to still have some mail from 2015 that she had not yet gone through.

Nieveen testified that there was no reason aside from her mental health that would have prevented her from responding to the sale of the tax certificate for her property in March 2015. She also testified, however, that sometimes she failed to pay bills because she did not have the money to pay and that when she did not have the money, she would ignore the bills. When asked by her counsel why she failed to pay certain bills, Nieveen initially responded that she "[j]ust didn't want to deal with the situation." When her counsel followed up to ask if she failed to pay because of symptoms of her depression and anxiety, Nieveen responded that it was "because [of] depression, anxiety, I didn't want to deal with life in general. So, looking at my bills was depressing, and making me anxious. I just didn't want to deal with it, and I didn't deal with it."

Nieveen acknowledged that several years prior to trial, she had received a notice from the city that she needed to make certain repairs to her house and remove a couch from its front porch. She admitted that she promptly responded to those notices and, with the help of her brother-in-law, did what the city required. She also acknowledged that in 2008, she received a notice that she had failed to pay her property taxes, but that her daughter paid the taxes and, as a result, the situation did not escalate as it did with respect to the tax certificate sale at issue in this case.

Nieveen admitted that she understood she had to pay her bills and that there were consequences if she failed to do so. She also admitted that between 2010 and 2016, neither a guardian, conservator, nor a power of attorney managed her affairs.

Nieveen's daughter also testified at trial. Her daughter testified that she had no reason to doubt Nieveen's diagnoses and that she had observed Nieveen to be "[v]ery withdrawn" and to sleep a lot. Nieveen's daughter corroborated Nieveen's testimony that she failed to pay taxes and other bills when due. When asked why Nieveen did not pay her bills, Nieveen's daughter responded, "I'd say [it is a] combination of money and just like — I don't — denial of just life, in general of the way life works . . . ."

Nieveen also offered and the district court received deposition testimony of Sabrina Hellbusch. Hellbusch is a licensed advanced practice registered nurse in Nebraska and is board certified in mental health. Nieveen has been a patient of Hellbusch since November 2018. Hellbusch confirmed that she had diagnosed Nieveen with "major depressive disorder, recurrent, severe," and generalized anxiety disorder. Hellbusch testified that Nieveen's mental disorder was "severe enough that it could cause a person to neglect an important activity and could cause a person to miss important deadlines." She also testified that, in her opinion, Nieveen's symptoms were sufficiently severe that they explained why her responsibilities have not always been met. Hellbusch admitted that she was only able to give opinions concerning Nieveen's condition from 2018 forward and thus could not give an opinion concerning Nieveen's condition in 2015.

In addition to evidence concerning Nieveen's mental health, Nieveen offered evidence regarding an attempt to redeem the property in May 2019. Nieveen and her daughter testified that her daughter supplied Nieveen with a blank check and that Nieveen went to the Lancaster County treasurer's office to tender payment for the unpaid taxes. They testified that the treasurer's office refused to accept the payment.

Vintage did not present any live testimony at trial. It did offer and the district court received an affidavit of Dr. Bruce Gutnik. Dr. Gutnik has practiced medicine in psychiatry and neurology for more than 46 years. Gutnik stated in his

affidavit that he had reviewed Nieveen's medical records and prescription records and concluded there was "no evidence" that at the time of the tax certificate sale "Nieveen was unable to manage her own affairs or understand her then current condition." He also stated that "[t]here was no evidence that she could not understand her legal rights or protect her rights."

*District Court Order.*

Following trial, the district court issued a written order finding that Nieveen was not entitled to the extended redemption period under § 77-1827 and dismissing the case. After summarizing the evidence, the district court explained that the relevant question was whether Nieveen suffered a mental disorder at the time of the tax certificate sale in March 2015. The district court concluded that this court set forth the definition of "mental disorder" when we said the following:

> [A] person with a mental disorder . . . is one who suffers from a condition of mental derangement which actually prevents the sufferer from understanding his or her legal rights or from instituting legal action[,] and . . . a mental disorder . . . is an incapacity which disqualifies one from acting for the protection of one's rights.

*Wisner v. Vandelay Investments*, 300 Neb. 825, 861, 916 N.W.2d 698, 726 (2018), quoting *Maycock v. Hoody*, 281 Neb. 767, 799 N.W.2d 322 (2011) (internal quotation marks omitted).

The district court determined that Nieveen had failed to carry her burden to establish a mental disorder. The district court stated that although it was clear that Nieveen suffered from depression and anxiety, "without something more," it could not find that her condition was such that she was entitled to the extended redemption period set forth in § 77-1827.

Nieveen appealed and filed a notice pursuant to Neb. Ct. R. App. P. § 2-109(E) (rev. 2014) that her appeal challenged the constitutionality of Nebraska statutes. We moved the case to our docket. The Attorney General filed a brief on appeal defending the constitutionality of the challenged statutes.

## ASSIGNMENTS OF ERROR

Nieveen assigns, renumbered and restated, that the district court erred by (1) finding she did not suffer from a mental disorder under § 77-1827 at the time of the tax certificate sale, (2) dismissing her claim that the issuance of the tax deed violated her rights under the Due Process Clauses of the U.S. and Nebraska Constitutions, (3) dismissing her claim that the issuance of the tax deed violated her rights under the Takings Clauses of the U.S. and Nebraska Constitutions, and (4) dismissing her claim that the issuance of the tax deed violated her rights under the Excessive Fines Clauses of the U.S. and Nebraska Constitutions.

## STANDARD OF REVIEW

[1] The constitutionality of statutes and statutory interpretation present questions of law. *HBI, L.L.C. v. Barnette*, 305 Neb. 457, 941 N.W.2d 158 (2020).

[2,3] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo by an appellate court, accepting the factual allegations in the complaint as true and drawing all reasonable inferences of law and fact in favor of the non-moving party. *SID No. 67 of Sarpy Cty. v. State*, 309 Neb. 600, 961 N.W.2d 796 (2021). However, an appellate court reviewing a dismissal on the pleadings is not obliged to accept as true legal conclusions couched as factual allegations or threadbare recitals of the elements of a cause of action supported by mere conclusory statements. *Id.*

[4,5] A quiet title action sounds in equity. *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018). On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict in a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the

witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

*Extended Redemption Period.*

Nieveen first argues that the district court erred by finding that she was not entitled to the 5-year extended redemption period under § 77-1827. Nieveen contends that if she was entitled to the extended redemption period, title to the property should be quieted in her name, because she attempted to redeem the property in May 2019 by paying the unpaid taxes. We will thus consider whether the district court erred in its determination that Nieveen was not entitled to the extended redemption period.

Section 77-1827 provides that "[t]he real property of persons with . . . a mental disorder so sold, or any interest they may have in real property sold for taxes, may be redeemed at any time within five years after such sale." We have held that an owner of property is entitled to the 5-year redemption period set forth in § 77-1827 if the owner has a mental disorder at the time of the sale of the tax certificate. See *Wisner, supra.* Accordingly, the relevant question in this case is whether Nieveen had a mental disorder for purposes of § 77-1827 in March 2015.

Nieveen's appellate briefs appeared to accept that the governing definition of mental disorder under § 77-1827 was the definition applied by the district court and set forth in *Wisner.* That definition, quoted in the background section above, requires a party seeking the extended redemption period to establish that he or she has a mental health condition, but it also requires that he or she establish that the condition prevented the person from understanding his or her legal rights or taking action to protect those rights. See *Wisner, supra.* At oral argument, Nieveen seemed to at least implicitly back away from the *Wisner* formulation, arguing that Nieveen's diagnoses alone should entitle her to the extended

redemption period. To the extent Nieveen has invited us to retreat from the definition of mental disorder adopted in *Wisner*, we decline.

Our adherence to the definition of mental disorder set forth in *Wisner* is informed by the history of § 77-1827 and our interpretation of similar language in a similar statute. The language of § 77-1827 has not always used the term "mental disorder." See § 77-1827 (Reissue 1981). Legislation enacted in 1986 removed the term "insane" and replaced it with "mental disorder." See 1986 Neb. Laws, L.B. 1177, § 34. In the context of another statute providing for a tolling of the statute of limitations if a person was "insane," Neb. Rev. Stat. § 25-213 (Reissue 1985), we said that "the word insane means such condition of mental derangement which actually prevents the sufferer from understanding his or her legal rights or instituting legal action" and that insanity, for purposes of that statute, "results in an incapacity which disqualifies one from acting for the protection of one's rights." *Sacchi v. Blodig*, 215 Neb. 817, 821, 822, 341 N.W.2d 326, 330 (1983) (emphasis omitted). The same legislation that changed the terminology of § 77-1827 removed that statute's reference to the word "insane" and replaced it with "mental disorder." 1986 Neb. Laws, L.B. 1177, § 5. After that amendment, the Nebraska Court of Appeals held that despite this change, the statute should have the same meaning. See *Vergara v. Lopez-Vasquez*, 1 Neb. App. 1141, 510 N.W.2d 550 (1993). The Court of Appeals relied on language from this court directing that "[a] mere change of phraseology" will not change the operation of a statute "unless the intent to make such change is clear and unmistakable." *Id.* at 1146-47, 510 N.W.2d at 553, quoting *Shames v. State*, 192 Neb. 614, 223 N.W.2d 481 (1974) (internal quotation marks omitted). In *Maycock v. Hoody*, 281 Neb. 767, 799 N.W.2d 322 (2011), we affirmed the Court of Appeals' interpretation of § 25-213.

All of this history brings us to *Wisner v. Vandelay*, 300 Neb. 825, 916 N.W.2d 698 (2018), where we held that the

same definition that was once used for "insane" and was later extended to "mental disorder" for purposes of § 25-213 should also be used for "mental disorder" for purposes of § 77-1827. Given the similarities between the two statutes and between the respective amendments to the statutes in 1986, we are not convinced that holding was erroneous. Furthermore, in the time since our decision in *Wisner*, despite making other changes to the tax certificate sale process, see 2019 Neb. Laws, L.B. 463, §§ 1 through 8 and 10 (amending §§ 77-1802, 77-1831 through 77-1835, 77-1837, and 77-187.01 (Cum. Supp. 2020); repealing § 77-1824.01 (Cum. Supp. 2020)), the Legislature has not amended § 77-1827. As we often say, where a statute has been judicially construed and that construction has not evoked an amendment, it will be presumed that the Legislature has acquiesced in the court's determination of the Legislature's intent. *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017). Accordingly, we will analyze Nieveen's claim that she had a mental disorder for purposes of § 77-1827 under the definition adopted in *Wisner*.

Under the *Wisner* definition, Nieveen was required to prove that she had a condition of mental derangement which prevented her either from understanding her legal rights or from taking action to protect her legal rights. We do not believe Nieveen proved that her condition was such that she was incapable of understanding her legal rights. Nieveen acknowledged in testimony that she knew she had to pay her bills and that there were consequences if she did not.

We likewise are not persuaded that Nieveen proved that her mental condition in March 2015 prevented her from taking action to protect her legal rights. Although Nieveen testified that her mental health was the only thing that would have prevented her from responding to the sale of the tax certificate in March 2015, there was also evidence of other possible reasons. Nieveen testified that sometimes she failed to pay bills because she lacked money. Nieveen's daughter also testified that Nieveen failed to pay bills because of a

combination of lacking money and a "denial . . . of the way life works." Other evidence also suggested that despite her depression and anxiety, Nieveen was capable of protecting her legal rights. Such capacity is indicated by her testimony that several years prior to trial, she promptly responded to a notice from the city about the condition of her house and, with the help of her brother-in-law, took corrective action. Furthermore, Nieveen admitted that her affairs were not managed by a guardian, conservator, or power of attorney.

We also note that Nieveen acknowledged that even prior to starting a more effective medication in 2018, she had "good days" and "bad days" with respect to her depression and anxiety. All of Nieveen's testimony focused on her claimed inability to tend to responsibilities during "bad days." Nieveen provided no testimony, however, that would have established what she was experiencing in March 2015 when the tax certificate was sold. Hellbusch, Nieveen's expert witness, could not give an opinion as to Nieveen's condition in March 2015. On the other hand, Gutnick, Vintage's expert witness, stated in his affidavit that based on his review of her medical records, he saw no evidence that she was unable to protect her rights at that time.

After reviewing this evidence de novo, we find that the district court did not err in determining that Nieveen did not have a mental disorder for purposes of § 77-1827 and thus was not entitled to the extended redemption period provided for in that statute. While we have no reason to question that Nieveen suffered from depression and anxiety in 2015, we do not believe she proved that those conditions prevented her from understanding her legal rights or taking action to protect them. Our decision should not be understood as a conclusion that depression and anxiety could never constitute a mental disorder under § 77-1827.

*Procedural Due Process.*

Nieveen next argues that the district court erred by dismissing her claim that the issuance of the tax deed violated

her rights to procedural due process guaranteed by the 14th Amendment to the U.S. Constitution and article I, § 3, of the Nebraska Constitution.

The 14th Amendment's Due Process Clause provides that States shall not "deprive any person of life, liberty, or property, without due process of law." The language in the Nebraska Constitution is similar. It says, "No person shall be deprived of life, liberty, or property, without due process of law . . . ." Neb. Const. art. I, § 3. We have interpreted our state constitutional provision "coextensive[ly]" with that of the 14th Amendment. *Keller v. City of Fremont*, 280 Neb. 788, 791, 790 N.W.2d 711, 713 (2010).

Nieveen alleged in her operative complaint that her rights to procedural due process were violated in two ways. First, she asserted that she was provided inadequate notice because, pursuant to § 77-1831, she received notice of her right to redeem only 3 months prior to Vintage's filing an application for the tax deed. Second, she asserted that she was denied her right to procedural due process because there was no process in place to claim a right to the extended redemption period under § 77-1827.

We can quickly conclude that the district court did not err by dismissing Nieveen's claim she was entitled to more advance notice of Vintage's intent to apply for a tax deed to her property. We very recently rejected essentially the same argument in *Continental Resources v. Fair, ante* p. 184, 971 N.W.2d 313 (2022). In that case, we held that due process did not require the delinquent taxpayer to receive notice at the time of the tax certificate sale and that it was sufficient the delinquent taxpayer received actual notice that a tax certificate had been sold, that he had 3 months to redeem the property, and that if the property owner failed to do so, the tax certificate holder would apply for a tax deed. *Id.* Under the reasoning of *Continental Resources*, Nieveen cannot show that she was constitutionally entitled to earlier notice.

As for Nieveen's claim that she was denied procedural due process because there was no process in place to claim a right to the extended redemption period under § 77-1827, it too encounters an immediate hurdle. As the district court observed in dismissing this claim, Nieveen brought this lawsuit to invalidate the tax deed on the basis of the extended redemption period and thus it cannot be said that there was *no process* by which Nieveen could claim a right to the extended redemption period. No doubt aware of this difficulty, Nieveen argues on appeal that due process required that she be provided with a hearing in which she could claim a right to the extended redemption period *prior to* the issuance of the tax deed.

We are not persuaded that the district court erred by dismissing this aspect of Nieveen's procedural due process claim. First, it is not clear that Nieveen was constitutionally entitled to an opportunity for a hearing prior to the issuance of the tax deed. Procedural due process is flexible and calls for such protections as the particular situation demands. *Manning v. Dakota Cty. Sch. Dist.*, 279 Neb. 740, 782 N.W.2d 1 (2010). And although sometimes government entities must provide an opportunity for a hearing before a party is deprived of an interest protected by the Due Process Clause, that is not always the case. See *id.*

Nieveen has not offered any reasons why it was imperative that an opportunity for a predeprivation hearing be provided here, and it would seem that at least some of the relevant factors tilt in the opposite direction. In order to determine whether an opportunity for predeprivation process is required, courts consider the "competing interests at stake, along with the promptness and adequacy of later proceedings." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53, 114 S. Ct. 492, 126 L. Ed. 2d 490 (1993). The competing interests can be analyzed through the three-part inquiry set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), which requires a balancing of

the private interest affected by official action, the risk of an erroneous deprivation through the procedures used, and the government's interest. See *James Daniel Good Real Property, supra*. Here, although Nieveen obviously has a great interest in her property, her operative complaint acknowledged that even after the issuance of the tax deed, she continued to reside there. Further, Nieveen can hardly argue that the process she ultimately received—a full-blown trial before a district court judge with the power to invalidate the tax deed issued to Vintage and quiet title in her name—was somehow inadequate.

In the end, we find it unnecessary to determine whether Nieveen was constitutionally entitled to the opportunity for a hearing on the applicability of § 77-1827's extended redemption period prior to the issuance of the tax deed. We reach this conclusion because Nieveen had such an opportunity. Nieveen's operative complaint alleges that she received notice that the tax certificate holder was applying for a tax deed on March 2, 2018, but Lancaster County did not issue a deed to Vintage until June 22. Nieveen could have filed a lawsuit prior to June 22 seeking to enjoin Lancaster County from issuing the tax deed on the grounds that she was entitled to § 77-1827's extended redemption period.

In other words, Nieveen was not denied a hearing prior to the issuance of the tax deed; she failed to avail herself of the opportunity for such a hearing. As we have previously held, the requirements of due process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it; if a person has access to the courts for protection of his or her rights, it cannot be said that such person was deprived of property without due process of law. *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999). Whether there should be an additional administrative process—permitting a delinquent property owner, before the issuance of a tax deed, to claim

the extended right to redeem under § 77-1827—is a matter properly addressed to the Legislature.

We find that the district court did not err in dismissing Nieveen's procedural due process claims.

*Takings.*

Nieveen also challenges the district court's dismissal of her claim that the issuance of the tax deed violated the Takings Clauses of the U.S. and Nebraska Constitutions. In support of these claims, Nieveen alleged in her operative complaint that by issuing the tax deed to Vintage, Lancaster County effectuated a taking of her property for a private purpose. Alternatively, Nieveen alleged in her operative complaint that even if the issuance of the tax deed was for a public purpose, she was entitled to just compensation because her equity in the real property exceeded her tax debt. Again, however, we recently rejected identical arguments in *Continental Resources v. Fair, ante* p. 184, 971 N.W.2d 313 (2022). In light of that decision, Nieveen cannot show the district court erred by dismissing her claims under the Takings Clauses.

*Excessive Fines.*

Finally, Nieveen argues that the district court erred by dismissing her claims based on the Excessive Fines Clauses of the U.S. and Nebraska Constitutions. Nieveen alleged that because the issuance of the tax deed resulted in her losing equity in her property well above her tax debt, it is an excessive fine. In *Continental Resources, supra*, we rejected an identical argument that the issuance of a tax deed violated the Excessive Fines Clause of the U.S. Constitution. And although no claim was made under the Excessive Fines Clause of the Nebraska Constitution in *Continental Resources*, Nieveen has not made an argument that we should ascribe a different meaning to that provision than its essentially identical federal counterpart. Accordingly, we find that the district court did not err in dismissing Nieveen's claim under the Excessive Fines Clauses.

## CONCLUSION

We find that the district court did not err when it determined that Nieveen was not entitled to the extended redemption period under § 77-1827 or when it dismissed Nieveen's constitutional claims. Accordingly, we affirm.

Affirmed.

Stacy, J., not participating.